DANIEL DAVIDSON

*v.*

JOHN REED *et al.*

*Filed at Springfield September 27, 1884.*

1. DEDICATION—*how made to appear.* A dedication of land to the public for any public use may be shown by grant, by user, or by the acts and declarations of the owner, coupled with evidence of acceptance by the public. But to be availing, there must be evidence of an intent to dedicate. No particular form or ceremony is necessary. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the person claimed to have made the dedication.

2. SAME — *dedication of ground for burial purposes — whether established.* Where the owner of a quarter section of land as early as 1844 buried a child in a corner thereof, since which time the same has always been used by the people of the neighborhood as a public burying place, and the declarations of such owner showed an intent to devote the land to such use, and the subsequent owners of the quarter section of land made no objection to such use, but recognized the same as a public burial place, it was *held*, that these facts were sufficient to show a dedication of the land so used, to the public, for a place for the interment of the dead.

3. INJUNCTION — *to prevent defacing and meddling with graves.* A court of equity will enjoin the owner of land from defacing and meddling with graves on land dedicated to the public for burial purposes, at the suit of any parties having deceased relatives or friends buried therein.

4. PARTIES — *on bill to protect burying ground.* Two persons, residents in the neighborhood of a public burying ground, having friends buried there, filed a bill to enjoin the party owning the tract of land on which it was located from defacing the graves, and to preserve the ground for the public use for burial purposes: *Held*, that they could maintain the bill in their names, for the benefit of themselves, as well as if all others directly interested had joined.

WRIT OF ERROR to the Circuit Court of Cumberland county; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. CLARK & CLARK, for the plaintiff in error.

Messrs. CRAIG & CRAIG, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought to enjoin Daniel Davidson, the defendant, from defacing or meddling with certain graves in an alleged grave yard in Cumberland county, on land belonging to the defendant. The bill also prayed for a decree declaring that the burying ground had been dedicated to the public. Upon a hearing on the bill, answer, replication and evidence, the court rendered a decree as prayed for in the bill, and the defendant sued out this writ of error.

It is contended by the defendant that the evidence was not sufficient to establish the fact that the land in question had been dedicated to the public for a burying ground. What

shall constitute a dedication of land to the public has been considered and determined by this court in several cases. In *Marcy* v. *Taylor,* 19 Ill. 635, it was held that dedication of a highway may be proven in various ways,—by grant, by user, or by the acts and declarations of the owner,—and that no particular time is necessary for evidence of dedication, but to be availing there must be an intent to dedicate. In *Rees* v. *City of Chicago,* 38 Ill. 327, it was also held that a dedication is to be proved, not alone by a deed, but by matter *in pais,* consisting of the acts and accompanying declarations of the owners of the land alleged to be dedicated. Such acts, coupled with evidence of acceptance by the public, may make a case of dedication. In *City of Cincinnati* v. *White's Lessee,* 6 Pet. 431, it is declared that no particular form or ceremony is necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation. In *Hunter* v. *Trustees of Sandy Hill,* 6 Hill, 407, it was held that "dedication  *  *  *  is the act of devoting or giving property for some proper object, and in such manner as to conclude the owner." It was also held that lands may be dedicated to persons and charitable purposes, as well as for public ways, commons, and other easements in the nature of ways, so as to conclude the owner who makes the dedication. In *Godfrey* v. *City of Alton,* 12 Ill. 29, in the discussion of the question of dedication, it was held that the Statute of Frauds does not apply to the dedication of ground to the public. A dedication may be made by grant or written instrument. It may be evidenced by acts and declarations, without writing. No particular form is required to establish its validity, it being a question of intention.

Tested by the principles announced in the authorities cited, it only remains to be seen whether the evidence authorized the decree that the land in question had been dedicated to the public, to be used as a place for the burial of the dead.

James McKnight originally owned the south-west quarter of section 21, township 10, north, range 10, east, in Cumberland county. The burying ground is located near the southeast corner of the land. As early as 1844 McKnight buried a child on the land in question, and since that time it has been known as the "McKnight grave yard," and has been used by the neighborhood as a burying ground. While McKnight owned the land he buried a wife and two children there. Reed testified that McKnight told him "he expected the neighbors would want to bury there, as we had commenced it." He also testified that he and McKnight talked of staking off and fencing the ground, but they neglected to do it. McKnight sold the land to Rhodes, and while Rhodes owned the land the dead were buried there, as before. He sold to Scott, and Scott to Collins, and Collins sold to the defendant. Collins, while he owned the land, buried a child in the grave yard. Indeed, from 1844 the land in question has been known, used and recognized by the different owners and the public as a public burying ground. While Collins owned the land he said if the people in the neighborhood would clear and fence it, he would give them a half acre. Rhodes also, as he testified, offered to give the grave yard if the people would fence it. It was also proven that the defendant offered to give the land occupied by the graves if the people would fence it.

The only conclusion to be reached from all the evidence is, that McKnight, when he owned the land, established a grave yard, and intended to dedicate to the public the particular tract in question, to be used as a place for the burial of the dead. It is true that when he sold the land no reservation was made in the deed, but the subsequent purchasers all had notice of the existence of the burying ground, and purchased subject to the rights the public had acquired in and to the property. In the case of *City of Cincinnati* v. *White's Lessee*, *supra*, it is said that all that is required is the assent of the owner of the land, and the fact of its being used for the

public purposes intended by the appropriation. The assent of the owner, McKnight, that the land should be appropriated for the burial of the dead, is clear and manifest. That the public accepted and used the land for the public purpose for which it was designated by the owner, is also beyond dispute.

It has been suggested that the bill can not be maintained in the names of the two complainants. The complainants were residents of the neighborhood. They had friends buried in the burying ground, and were thus interested in preserving, for themselves and the public, the burying ground as it had been established, and we are of opinion that they had the right to sue in behalf of themselves and others having a like interest. (*Beatty & Ritchey* v. *Kintz*, 2 Pet. 585.) The bill was brought, and in our judgment properly, for the protection of the rights of the people in that particular locality, and we perceive no reason why it may not be maintained in the names of a part for the benefit of all, as well as if all directly interested had joined in the bill.

The decree of the circuit court will be affirmed.

*Decree affirmed.*