·GEORGE D. WORMLEY

*v.*

JOHN T. WORMLEY *et al.*

*Opinion filed February 17, 1904.*

1. CEMETERIES—*land may be dedicated for purpose of cemetery.* Land may be dedicated for the purpose of a cemetery without any particular form or ceremony, it being a sufficient dedication if the owner sets apart land for a cemetery and assents to its use as such.

2. SAME—*equity will enjoin the owner from interfering with cemetery.* Where land is set apart by the owner for a burial place and used for many years with his consent for such purpose, a court of equity will enjoin him, and those claiming under him, from defacing or meddling with graves.

3. SAME—*who may file bill to enjoin desecration of cemetery.* Any person having relatives or friends buried upon the ground which the owner has consented shall be used as a cemetery may maintain a bill to enjoin such owner from desecrating the grave.

4. PRACTICE—*when order dismissing bill may be reviewed.* Notwithstanding the complainants take leave to amend after a demurrer is sustained but fail to file the amendments within the time allowed, whereupon the court strikes the amendments from the files and dismisses the bill for want of equity, they are entitled, on writ of error, to show the court erred in dismissing the bill for want of equity upon its face.

5. PARTIES—*when bill should not be dismissed, for want of equity, on general demurrer.* A bill should not be dismissed, for want of equity, on general demurrer, if it shows any grounds for equitable relief, even though the temporary injunction granted is dissolved.

6. SAME—*when writ of error will not be dismissed for mis-joinder of parties.* A writ of error sued out by only one of the complainants, who names all of his co-complainants and the defendant as defendants in error, will not be dismissed for mis-joinder of parties, where the defendants in error enter their appearance and fail to assign cross-error or ask to be joined as plaintiffs in error, since such action creates a severance.

WRIT OF ERROR to the Circuit Court of Kendall county; the Hon. CHARLES A. BISHOP, Judge, presiding.

This is a bill in chancery, filed in the circuit court of Kendall county on June 10, 1899, by the plaintiff in error, George D. Wormley and all of the defendants in error except John T. Wormley, (said defendants in error, except John T. Wormley, being ten in number,) as complainants, against defendant in error, John T. Wormley, as defendant. A general demurrer was filed to the bill. On January 4, 1901, the demurrer was sustained. Subsequently on April 3, 1901, the bill was dismissed for want of equity, and the costs were taxed against the complainants below, and it was ordered that the defendant below have execution therefor. The present writ of error is sued out for the purpose of reviewing the decree, so entered, which dismissed the bill for want of equity.

In the bill, the orators therein being plaintiff in error, George D. Wormley, and ten other persons, who are defendants in error herein with the defendant in error, John T. Wormley, alleged that in February, 1839, and prior thereto and thereafter, one John H. Wormley was the owner in fee of a certain tract of eighty acres of land in said county, and also was the owner in fee of other lands particularly described in the bill; that such other lands so described constituted in all one-half acre; that said one-half acre of land so described was generally known as the "Wormley cemetery," and had been so known and recognized ever since the year 1839; that, in February and June of 1839, two of John H. Wormley's relatives were buried in said one-half acre of land; that in 1845 a brother-in-law of his was buried on said half acre; that in 1845 John H. Wormley, being the owner of said one-half acre, and of other lands about the same whereon he resided, dedicated by words and acts said half acre for a burying ground for the uses of the Wormley family, and their relatives; that ever since 1839 said half acre has been used by the Wormley family, and the neighbor-

hood, for the uses of sepulture; that, since the year 1845, there have been buried on said dedicated land many persons, the names of about thirty of whom are mentioned in the bill, being of the Wormley family, and relatives of orators; that monuments have been erected over the graves of many of said decedents, many of them by orators; that orators, and other relatives of said decedents, have continued to protect the remains of those buried in said cemetery, and to preserve the identity and memory of their said relatives; that orators have not in any manner neglected to preserve the monuments, erected to indicate the identity and preserve the memory of their said relatives, or to give and continue to said cemetery the character and name of a burial ground, except so far as they have been prevented by John T. Wormley, the defendant; that there were then, at the time of filing the bill, in said cemetery more than eighty graves, cared for and kept by orators, and other relatives of the deceased; that John H. Wormley settled in Oswego, in Kendall county, several years before 1839, and resided on and owned the farm on which said cemetery is located, from the time of such settlement until the time of his death about the year 1890; that during all that time he recognized said cemetery, as the burial ground of his relatives and the neighborhood, and assisted in maintaining the same as such; that, during his lifetime, he, with other relatives of those buried in said cemetery, caused to be erected and maintained a suitable fence, enclosing said half acre dedicated by him as a cemetery; that such fence was kept up by orators, and other relatives of the deceased, until prevented by the defendant in a violent and unlawful manner; that, upon the death of John H. Wormley, the defendant, John T. Wormley, as his son and heir, came into the ownership and possession of the farm, on which said cemetery is located, and still owns and possesses the same; that, for many years after his coming into such ownership of said farm, he recognized the said

cemetery as the burying ground of and for the Wormley family and neighborhood, and that the same had been dedicated by his father, John H. Wormley, for such purposes; that said cemetery is located on said farm on the line of the Aurora and Oswego wagon road, and ingress and egress in and out of said cemetery can be had without in any way interfering with, or trespassing on, the lands or premises of the defendant, John T. Wormley; that lately said defendant has torn down the fence, surrounding said cemetery, and is pasturing cattle, horses and swine therein; that he has defaced, and is defacing, the monuments and desecrating the graves in said cemetery; that he threatens to shoot and kill any persons, who attempt to fence said cemetery, or care for the monuments and graves therein; that he threatens to enter and remove the monuments therein, and to plow and cultivate the land therein; that, by threats and force, he prevents orators, and other relatives of the buried, from replacing the fence or caring for the monuments and graves in said cemetery; that orators fear that he will carry his threats into execution, unless restrained by the order of the court. The bill thereupon prays that John T. Wormley may be restrained by injunction from defacing, or in any manner interfering with, the monuments and graves in said cemetery, or with orators, or any one of them, in fencing said cemetery and preserving the monuments and caring for the graves therein, or in any way interfering with the fence or fences of said cemetery, now or hereafter erected; that, upon a final hearing, it may be ordered and decreed that said described one-half acre of land, known as the "Wormley cemetery," has been dedicated to the Wormley family, and their relatives, and neighborhood contiguous thereto, as a burying ground; that said injunction may be made perpetual, and orators may have such other relief as equity may require, etc.

ALDRICH & WORCESTER, for plaintiff in error.

HOPKINS, DOLPH & SCOTT, for defendant in error John T. Wormley.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is well settled in the United States, that cemeteries are among the purposes, for which land may be dedicated; and it is held that, upon such dedication, the owner is precluded from exercising his former rights over the land. (5 Am. & Eng. Ency. of Law,—2d ed.— p. 784, and cases referred to in notes).

It is also well settled, that a court of equity will enjoin the owner of land from defacing, or meddling with, graves on land, dedicated to the public for burial purposes, at the suit of any party, having deceased relatives or friends buried therein. (*Beatty* v. *Kurtz*, 2 Pet. 585; *Davidson* v. *Reed*, 111 Ill. 167). In the case of *Beatty* v. *Kurtz, supra*, the Supreme Court of the United States, in speaking of property consecrated to cemetery purposes, held that the removal of the memorials, erected by piety or love to the memory of the good, are such acts as can not be "redressed by the ordinary process of law. The remedy must be sought, if at all, in the protecting power of a court of chancery; operating by its injunction to preserve the repose of the ashes of the dead, and the religious sensibilities of the living." In *Davidson* v. *Reed, supra*, two persons, residents in the neighborhood of a public burying ground, having friends buried there, filed a bill to enjoin the party owning the tract of land, on which it was located, from defacing the graves, and to preserve the ground for the public use for burial purposes; and it was there held that they could maintain the bill in their names, for the benefit of themselves, as well as if all others directly interested had joined.

It is also well settled, that no particular form or ceremony is necessary to dedicate land for the purposes of a cemetery. All that need be shown to constitute such

dedication is the assent of the owner, and the fact that the land is used for the public purposes, intended by the appropriation. Staking off ground as a cemetery and allowing burials therein amounts to a dedication. An express setting apart of land for such a purpose by the owner may constitute a dedication of the land as a burial ground or cemetery. (5 Am. & Eng. Ency. of Law,— 2d ed.—p. 784; 9 id. p. 28; *Hagaman* v. *Dittmar,* 24 Kan. 42; *Hayes* v. *Houke,* 45 id. 466). It has been held that the notorious use of property for twenty years for burial purposes with the acquiescence of the owner affords presumptive evidence of its dedication for such purposes. (*Boyce* v. *Kalbaugh,* 47 Md. 334).

In *Davidson* v. *Reed, supra,* this court held that a dedication of land to the public for any public use may be shown by grant, by user, or by the acts and declarations of the owner, coupled with evidence of acceptance by the public; and that, where there was evidence of an intent to dedicate, no particular form or ceremony is necessary. In *Davidson* v. *Reed, supra,* it appeared that the owner of a quarter section of land as early as 1844 buried a child in a corner thereof, since which time the same had always been used by the people of the neighborhood as a public burying place, and the declarations of such owner showed an intent to devote the land to such use, and the subsequent owners of the quarter section of land made no objection to such use, but recognized the same as a public burial place; and it was there held that these facts were sufficient to show a dedication of the land so used to the public for a place for the interment of the dead.

In *Alden Coal Co.* v. *Challis,* 200 Ill. 222, we have recently held that the Statute of Frauds does not apply to dedication of ground to the public, but that the same may be evidenced by acts and declarations without any writing, and that no particular form is necessary to the validity of the dedication, it being properly a question

of intention, and that a dedication may be established by parol. (See also *Cincinnati* v. *White*, 6 Pet. 440). In *Alden Coal Co.* v. *Challis*, *supra*, we also held that the acceptance necessary to complete such dedication may be implied from acts and from user; and that, when the dedication is beneficial or greatly convenient or necessary to the public, an acceptance will be implied from slight circumstances.

By comparing the allegations of the bill in the case at bar, as the same are set forth in the statement preceding this opinion, with the allegations of the bill, passed upon by this court in *Davidson* v. *Reed*, *supra*, it will be found that the two cases correspond in all essential particulars. It appears from the allegations of the bill in the present case that, during the lifetime of John H. Wormley, the original owner of the land dedicated for the purposes of the Wormley cemetery, he recognized the half acre of ground here in question as a cemetery for a period of about fifty-one years, to-wit, from 1839 to his death in 1890. During that time he not only buried his own relatives upon this half acre, and permitted others to bury their dead there, but he indicated his intention to make such dedication, and to continue it, by positive and open acts. He, with others who buried their dead upon the half acre, caused to be erected and maintained a suitable fence, enclosing such half acre. He permitted the persons, who buried their dead there, to erect monuments over them, and to protect and preserve the identity of the remains buried there. The bill alleges that more than eighty persons have been buried in the cemetery, and that their graves have been cared for and kept up by their relatives. John H. Wormley died in 1890, and the defendant, John T. Wormley, his son, for more than ten years after that date, recognized the half acre as a cemetery, and did nothing to interfere with its use as such, until about the time the present bill was filed. The bill also alleges that he has committed acts of dep-

207—27

redation upon the cemetery by tearing down the fence surrounding it, and by pasturing his horses and cattle and swine therein; and also that he not only threatens to kill persons, who attempt to re-build the fence around the cemetery, or care for the monuments and graves therein, but also threatens to remove the monuments erected to commemorate the dead, and to plow and cultivate the land therein. The demurrer, filed by the defendant, admits all these allegations of the bill to be true. When the land descended to John T. Wormley from his father, he inherited it subject to the rights, which had been acquired in this half acre as a cemetery. The assent of his father to its use for such purposes is clearly averred in the bill, and it is also alleged therein, and shown, that it was accepted by the parties using it for the purposes, for which it was dedicated by the owner.

Under the facts and under the authorities applicable thereto, we are of the opinion that the court below erred in sustaining the demurrer to the bill, and that such demurrer should have been overruled.

*Second*—Some points of a technical character are insisted upon by the defendant in error, John T. Wormley, as justifying the action of the trial court.

When the order was entered on January 4, 1901, sustaining the demurrer to the bill, leave was granted to the complainants below to file an amendment to the bill by January 26, 1901. This order seems to have been entered by mistake in term No. 18 of the law side, instead of term No. 18 of the chancery side, of the docket of the October term, 1900, of the circuit court. The amendments were not filed within the time, allowed by the court, to-wit, by January 26, 1901, and were not filed until April 1, 1901. On April 3, 1901, they were stricken from the files for non-compliance with the order, which required them to be filed by January 26, 1901.

Defendant in error insists that, by taking leave to amend their bill after the demurrer was sustained, the

complainants confessed the demurrer, and waived all right to except to the ruling of the court in sustaining it.  In support of this position counsel cite many cases, which apply, as a rule thus insisted upon, to common law pleadings.  It is also said that the decision of the trial court in sustaining the demurrer was merely interlocutory, and that, if complainants were willing to rest their case upon the demurrer, they should have moved the court to dismiss the bill, and should have entered of record their election to abide by it.  It is also said that, where a demurrer to a bill in chancery is sustained and no amendments are made within the time prescribed by the court, the court may dismiss the bill.  We do not deem it necessary to pass upon the validity of these contentions as we do not regard them as being applicable to the present case.

The record does not show that the court dismissed the bill because the amendments, which the complainants were given leave to file, were not filed within the time specified in the order.  The court merely struck the amendments from the files because they were not filed within the time allowed.  If, then, the case had been allowed to stand upon the order, sustaining the demurrer to the bill, a different question would be presented.  The question would then arise whether it was not the duty of the complainants to dismiss their bill, in order to take an appeal to, or sue out a writ of error from a reviewing court.  But the court itself dismissed the bill, entering the following order, to-wit: "And the court thereupon orders and decrees that the bill of complaint filed herein be and the same is hereby dismissed for want of equity, and that the costs in this cause be, and the same are hereby taxed against the complainants, and that defendant have execution therefor."  The court, having sustained the demurrer, dismissed the bill of its own motion for want of equity.  The order, so dismissing the bill, was not an interlocutory order, like the order sustaining the

demurrer, but was a final order. We see no reason why the complainants had not the right to review this final order by writ of error. Independently of the question, whether the complainants, by taking leave to amend the bill, waived their right to complain of the action of the court in sustaining the demurrer to the bill, they have the right to show, if they can, that the court erred in dismissing the bill for want of equity upon its face.

It is also said that the *jurat* attached to the bill was not in proper form, but we regard this as immaterial, for the reason that the insufficiency of the *jurat*, if it existed, went only to the temporary injunction, which was granted. It had no effect upon the bill as a whole. There was sufficient equity in the bill to justify its retention, so as to require the defendant to answer it, even if the defective verification was such as to authorize the court to dissolve the temporary injunction. A bill should not be dismissed for want of equity on general demurrer where it shows any ground for equitable relief. (*Gooch* v. *Green*, 102 Ill. 507; *Wescott* v. *Wicks*, 72 id. 524.) In the latter case of *Wescott* v. *Wicks*, it was held that "although a case is so defectively made by a bill in chancery that the court cannot fully comprehend it, and pronounce upon it with confidence, still, if the court can see from what is stated that there is equity in the bill, it is error to sustain a demurrer to the whole bill for want of equity."

*Third*—It is further claimed by the defendants in error that the writ of error should be dismissed for misjoinder of parties. All of the defendants in error, except John T. Wormley, were co-complainants in the court below with the present plaintiff in error, George D. Wormley, and claimed the same rights; and it is said that they should have been joined here as plaintiffs in error with George D. Wormley. The general rule undoubtedly is, that all the plaintiffs or defendants, against whom a joint judgment is rendered, must be joined as plaintiffs in error where a writ of error is sued out by one or more

of them.   Section 70 of the Practice act provides that, in all cases where a judgment or decree shall be rendered against two or more persons, either one of them may remove such suit to the Appellate Court by appeal or writ of error, and for that purpose shall be permitted to use the names of all such persons, if necessary. (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3099; *McIntyre* v. *Sholty*, 139 Ill. 171; *Cooke* v. *Cooke*, 194 id. 225).   It is true that the present plaintiff in error, George D. Wormley, could have used the names of all his co-complainants in the court below, as co-plaintiffs in error with himself in suing out the present writ of error.   As was said in *McIntyre* v. *Sholty, supra,* (p. 176): "All the plaintiffs or defendants in the original suit who are alive must join in the writ of error, and it is competent for one to join the others without their consent.   The reasons for this rule are, that the writ must agree with the record, and that, if one of a number of plaintiffs, or one of a number of defendants, who have not distinct and several interests, should be permitted to bring a writ of error, every one might do the same, and such a practice would tend to multiply suits.   If the parties, whose names are thus used by a co-plaintiff, or co-defendant, choose to abide an erroneous judgment, and refuse to appear and assign errors, they must be summoned and severed, and then after the severance the writ may be prosecuted in the name of such co-plaintiff, or co-defendant."   If in the present case George D. Wormley had sued out the writ of error in his own name, and also in the names of the other co-complainants with him in the court below, and if they had refused, when their names were so used, to join in the prosecution of the writ, he could have summoned them into court, and obtained a judgment of severance against them, so that then he could have prosecuted the writ alone, and as sole plaintiff in error.   (7 Ency. of Pl. & Pr. pp. 860-862).   While this was not done in the present case, yet when George D. Wormley sued out the

writ of error alone in his own name, he made all of his co-complainants below defendants in error with the defendant below, John T. Wormley. All of his co-complainants have been served as defendants in error or have entered their appearance as defendants in error. They are, therefore, before this court. They might have assigned cross-errors, or they might have asked to be joined with George D. Wormley as co-plaintiffs in error for the purpose of prosecuting the writ of error. They have not taken any such steps. But being before the court as defendants in error by entry of appearance, the case stands in the same position as though there had been a summons and a severance. They are in court, and this would be the only effect, which could result from a summons. Where there are several defendants in an action, all may plead jointly one and the same defense, or each may plead a separate defense for himself, and in the latter case he is said to sever; and his doing so is termed severance in pleading. (25 Am. & Eng. Ency. of Law,—2d ed. —p. 631). In the present case, there is an actual severance, because the plaintiff in error, George D. Wormley, is prosecuting this writ of error alone, and not jointly with the other complainants in the bill. Their action in declining or neglecting to assign cross-errors, or to unite with him in the prosecution of the writ of error while they are in court by their entry of appearance, operates to create a severance, and justifies him in prosecuting the writ of error alone. For these reasons the motion to dismiss the writ of error is overruled.

Accordingly, the decree of the circuit court, dismissing the bill for want of equity, is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*