COUNCIL BLUFFS SAVINGS BANK, Appellant, v. ROY N. TOWL et al., Appellees.

May 8, 1928.

Tinley, Mitchell, Ross & Mitchell, for appellant.

Kimball, Peterson, Smith & Peterson, for appellees.

FAVILLE, J.—The Forest Park Company is a corporation organized under the laws of this state. As a part of its business, it platted a tract of land as an addition to the city of Council Bluffs. The Robert B. Wallace Company was also a corporation, engaged in business at Council Bluffs, one feature of which was the brokerage and loan business. The appellee Towl is a civil engineer. Robert B. Wallace individually held stock in the Forest Park Company, and was secretary of said corporation. The appellees Towl and Laustrup also were stockholders in the Forest Park Company. In the addition so platted by the Forest Park Company there was a certain lot described as Lot No. 51, which was located on a hill, and apparently not readily salable for residential purposes. Towl conceived the idea that he could erect a house upon said lot that would not only be salable, but

would be of value as a demonstration of the ability to use a lot of that character for residential purposes. The Forest Park Company was interested in the sale of its property, and Wallace Company was its sale agent. An arrangement was made between Towl and the two corporations, which, however, was not reduced to writing. The scheme was that the lot in question should be deeded to Towl, who should proceed with the erection of a house upon said lot, and when the house had been built, it was planned that it should be sold, and the profits derived from the sale should be divided, on the basis of one half thereof to Towl, one fourth to the Robert B. Wallace Company, and one fourth to the Forest Park Company. In pursuance of this scheme, the Forest Park Company deeded the said lot to Towl, the deed reciting a consideration of $2,500; but in fact no money was paid. It was, however, understood and agreed between the parties that, when the property was sold, $500 was to be charged against the property as the purchase price thereof, and paid to the Forest Park Company. After the property had been deeded to Towl, in pursuance of this arrangement, Towl executed a first mortgage on said property in the sum of $4,000, which was made payable to the Wallace Company, and was by it sold to the Metropolitan Life Insurance Company. The proceeds of this mortgage were used in the erection of the house. In the course of time, additional funds were needed, and Towl executed a note for $2,500, payable to the Wallace Company, and the latter, in turn, negotiated said note to the appellant herein. The proceeds of this note were all used in the construction of the building. At the time that the project was undertaken, it was expected by the parties that the house would cost approximately $8,500. It developed, however, that the final cost was more than $13,000. After the two loans before referred to had been made, more money was needed to complete the house, and, on January 18, 1923, the note and mortgage in suit were executed by Towl, in the sum of $6,000. The Robert B. Wallace Company was made payee in said note and mortgage, and it transferred the same by assignment to the appellant.

The note in suit is in the same form as the note which we considered in the case of *Hubbard v. Wallace Company*, 201 Iowa 1143. It was a nonnegotiable instrument, and hence subject to defenses in the hands of the appellant. Two defenses are

relied upon by the appellees: (1) That there was no considera-
tion for the execution of the note and mortgage; and (2) that
the Wallace Company, payee in said note, did not use the pro-
ceeds of said note to pay off the said first mortgage of $4,000 to
the Metropolitan Life Insurance Company and a portion of the
said note of $2,500 held by the appellant, which payment it is
claimed it was understood and agreed the Wallace Company
should make out of the proceeds of the note in suit. Under the
record in this case, the question of a want of consideration en-
tirely fails. The note was given for the express purpose that it
should be negotiated, and the undisputed evidence shows that
it was negotiated in accordance with the agreement of all of the
parties, and the proceeds paid by appellant to the Wallace
Company.

The real question in the case is whether or not the claim
that the Wallace Company did not dispose of the proceeds of
said note and mortgage in accordance with the understanding
and agreement of the interested parties is a complete defense to
appellant's action on the note. In determining the question, we
must keep in mind the relation of the several parties. Towl,
the Wallace Company, and the Forest Park Company entered
into a mutual arrangement in respect to the property involved
in this litigation. The deed from the Forest Park Company to
Towl was a mere convenience, for the purpose of handling the
transaction for the benefit of all concerned. The proceeds of
the ultimate sale of the property were to be divided as above
stated. It was expected that the house would be sold, and none
of the parties contemplated the necessity of putting up any
money to carry on the project, except such as was borrowed.
The expectation was that the property should be mortgaged for
about half of the cost of the building, and that it would be sold
at or before its final completion, and the profits divided between
the interested parties. The property did not sell as readily as
expected, and the proceeds of the first loan of $4,000 and the
additional loan of $2,500 were exhausted, and more money was
needed. The funds were all handled by the Wallace Company.
It received the proceeds of the loans, and made the disburse-
ments to the parties erecting the house. A separate account of
the transactions in connection with the "Towl house" was
kept on the books of the Wallace Company. It appears in the

record that, on or about January 18, 1923, the date of the note in question, the account for the erection of said house was overdrawn approximately $4,000. There were then outstanding bills for labor and material aggregating something like $3,000. The house was not yet completed, and no sale was in sight, and no rentals were accruing thereon. The property was subject to the filing of mechanics' liens for labor and material used in the erection of the building, which remained unpaid. It was in this situation that the note of $6,000 in suit was executed. The loan was made payable to the Wallace Company, and it was the intention and understanding of the parties that the Wallace Company should negotiate said note and mortgage and receive the proceeds therefor. This the Wallace Company did. The very nub of this lawsuit is at this point. The appellees contend that the understanding and agreement between all of the interested parties at the time were that the Wallace Company should use the proceeds of the loan for the express purpose of paying off the outstanding mortgage of $4,000 to the Metropolitan Life Insurance Company, and apply the balance upon the $2,500 note which was then held by the appellant. The Wallace Company did not so apply the proceeds of the loan, and the question at this point is whether or not, under all of the circumstances disclosed in this record, the failure of the Wallace Company to so apply the proceeds constitutes a defense to said note in the hands of the appellant. The undisputed evidence in the record discloses that the Wallace Company did apply every dollar of the proceeds of the note in suit to the payment of valid bills for the erection of the house in question. The total cost of the house was shown to be $13,681.30. After the house was erected, the Wallace Company collected certain items of rentals therefrom, which are also accounted for; but it satisfactorily appears that the entire proceeds derived from the negotiation of the note in suit were applied by the Wallace Company upon valid claims for the erection of said house. Robert B. Wallace, who had charge of the Wallace Company, died before the trial of this case. The question is whether or not, under all of the facts and circumstances disclosed by this record, the appellees can successfully urge, as against the appellant, the claimed failure on the part of the Wallace Company to apply the proceeds of said loan in a designated manner.

Towl, the Wallace Company, and the Forest Park Company entered into an arrangement with respect to the building and selling of said house, which is generally termed a joint adventure. We have recently had occasion to discuss the question of the law pertaining to joint adventures in *Tusant & Son Co. v. Weitz Sons*, 195 Iowa 1386, and in the case of *Bond v. O'Donnell*, 205 Iowa 902. We shall not repeat the discussion.

In this case there is no question that the execution of the note in suit by Towl was for the benefit of the parties in the joint adventure. In negotiating the note, Wallace Company was acting for itself and for its associates, Towl and the Forest Park Company. It received the money, not for Towl individually, but for the use and benefit of all the parties engaged in the joint adventure, and did so use it.

This action is in equity, and the court must look to the substance, rather than to the mere form of the transaction. Let us consider the case as though the three joint adventurers, the Wallace Company, Forest Park Company, and Towl, had together gone to the appellant bank and told said bank the exact situation: namely, that they were jointly interested in the construction of this house; that they wished to borrow money for the purpose of paying for said improvement; that the Wallace Company was handling all of the money and making all the disbursements; that the title to the property stood in Towl, for convenience; that Towl would execute a note and mortgage to the bank, nonnegotiable in character, to borrow $6,000; that the money was to be paid over by the bank to the Wallace Company, to be used by it for purposes in connection with the joint adventure, as the three parties thereto might agree among themselves; and that they expected the Wallace Company to pay the first mortgage and part of the outstanding $2,500 note with the money. Suppose that, knowing all of this in advance, the bank had taken Towl's note and paid the Wallace Company the $6,000, in a suit upon the note by the bank would it be a defense defeating recovery to claim and prove that, after the Wallace Company had received the money from the appellant bank, it failed to use it as agreed among the joint adventurers, although it did in fact use every dollar of it for the common enterprise,—in other words, used it in one method for the common enterprise, instead of in another? Certainly, under such cir-

cumstances, the bank could not be held as a trustee, charged with the duty of seeing that the Wallace Company disbursed the money as agreed upon by the joint adventurers among themselves. We are treating the situation as though the loan had been made by the appellant bank with full knowledge of all of the existing conditions at the time, and, with all such knowledge, it had advanced the money to the Wallace Company on the note. The bank should not be defeated of its right to recover for the money so "advanced" for the benefit of the joint enterprise merely because the Wallace Company, in applying the proceeds for the benefit of the joint enterprise, applied it in one manner, rather than in another. Such a result would cause a court of chancery to perpetrate a wrong, rather than to prevent one. This cannot be.

The appellees make no claim, by pleading or proof, that any injury whatever resulted to them from the manner in which the Wallace Company applied the proceeds of the $6,000 note. We are not concerned, on this appeal, with the question of the liability of the several joint adventurers among each other for contribution or otherwise, nor of possible personal liability of all of the joint adventurers to the appellant. We are limiting our holding simply to one question: that, under the pleadings and the facts proven in this case, the appellant was entitled to judgment for the amount due on its note, and for foreclosure of its mortgage against the property.

The decree of the trial court is reversed, and a decree in accordance with this opinion may be entered in this court or in the district court, as the appellant shall elect.—*Reversed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.