Anna V. Brost, Complainant, v. Niels Juul et al., Defendants.
Albert F. Hammann, Cross Complainant and Appellee, v. Anna V. Brost et al., Cross Defendants.
Appeal of Anna V. Brost.

Gen. No. 35,574.

424

Opinion filed May 17, 1932. Rehearing denied May 31, 1932.

JACOB M. SHERBAHN, for appellant.

RUBENS, FISCHER, MOSSER & BARNUM, GEORGE GIL-LETTE, THOMAS J. HOBAN and ELMER M. LEESMAN, for appellee; HARRY H. BARNUM, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In August, 1929, Anna V. Brost filed a bill to foreclose a second trust deed (hereinafter called the Brost mortgage) on certain improved premises in Chicago. On November 13, 1929, Albert F. Hammann filed a cross-bill to foreclose another trust deed on the same premises (hereinafter called the Hammann mortgage) which he claimed was a prior lien to the Brost mortgage. The cause was referred to a master in chancery who, after hearing the evidence, submitted his report, dated November 24, 1930, in which after making numerous findings he recommended that a decree of foreclosure be entered in accordance with the prayer of the cross-bill. Mrs. Brost, only, filed objections to the report, which were overruled, and on the hearing before the chancellor they were ordered to stand as exceptions. On May 5, 1931, the decree appealed from was entered, in which the court confirmed the master's report and found, *inter alia*, (a) that cross complainant "has a first, prior and paramount lien" on the premises for the sum of $17,638.17, and interest on the sum of $15,412.50 thereof at the rate of seven per cent per annum from the date of the master's report

(November 24, 1930), and costs of suit; that Ella F. Juul (wife of Niels Juul prior to his death) is personally liable for the payment of said sums, and that Niels Juul, Jr., and Straus National Bank and Trust Co., as executors of the estate of Niels Juul, deceased, are liable for the payment of said sums out of the assets of said estate in due course of administration; (b) that Mrs. Brost has a lien for the sum of $28,010.67, and interest on the sum of $24,000 thereof, at the rate of seven per cent per annum from November 24, 1930, and costs of suit, *"subject only* to said first, prior and paramount lien of cross complainant"; (c) that the equities are with cross complainant; and (d) that the premises are "improved with a three-story, stone front building, containing six apartments, . . . located at 4907-09 Kenmore avenue, Chicago, and are now in the possession of Edward C. Hoyer, as receiver." And the court ordered and adjudged that in case said amounts were not paid within three days the premises be sold at public sale in the usual manner to satisfy said liens in the order of the mentioned priorities, etc. From the decree Mrs. Brost appealed, and in her appeal bond it is stated that "the condition of the above obligation is such that whereas said Albert F. Hammann did, on May 5, 1931, . . . recover a decree against the above bounden Anna V. Brost, *decreeing that his lien is prior and superior to that of said Anna V. Brost,* from which decree . . . she has prayed for and obtained an appeal," etc.

In the cross-bill Hammann alleged *inter alia* that on April 12, 1926, Niels Juul and wife executed and delivered their two principal notes payable to bearer, aggregating $15,000, one being for $5,000, and the other for $10,000, due six years after date, and bearing five and one-half per cent interest, payable semi-annually and evidenced by 12 notes for $137.50 each, and 12 notes for $275 each, all payable to bearer with

interest at seven per cent after maturity; that to secure the payment of the notes they executed and delivered their trust deed (Hammann mortgage) dated April 12, 1926, recorded April 21, 1926, conveying the premises involved to the Chicago Title & Trust Co., as trustee; that cross complainant is the legal owner for a valuable consideration of the notes and trust deed; that "the loan evidenced thereby was used, applied and paid *to satisfy, discharge and release* the indebtedness secured by a trust deed from David Brown and wife and Ella Brown to W. J. Klingenberg, as trustee, dated May 1, 1921, recorded May 13, 1921 (hereinafter called the Brown mortgage), and for no other purpose, at the express request and direction of said Juul and wife, the then owners in fee of the premises, in accordance with the provisions of their certain written agreement"; that by virtue of the agreement the legal holder (Hammann) of the notes secured by the Hammann mortgage "was *subrogated* to all of the rights" of the legal holder of the Brown mortgage and the notes secured thereby; that the Hammann mortgage and notes, now owned by cross complainant, "were made and executed by said Juul and wife *for the sole purpose of refunding the indebtedness*" secured by the Brown mortgage, "in accordance with the right given to Niels Juul under the terms and provisions" of the *Brost* mortgage; that by the provisions of the Brost mortgage, upon which complainant's bill is based, Juul and wife "reserved the right and were permitted to negotiate a new loan of $15,000 on said real estate for the purpose of so refunding the indebtedness" secured by said Brown mortgage—"the lien of which said new loan of $15,000 to have superiority over the lien" of the Brost mortgage; that complainant, by accepting the Brost mortgage, "thereby agreed that the lien of the new trust deed (Hammann mortgage) *should be and remain a first lien* upon the

premises and that the trust deed owned by Mrs. Brost (Brost mortgage) should be and remain subject, inferior and junior to cross complainant's trust deed (Hammann mortgage) and notes''; that by the terms of the Hammann mortgage, Juul and wife agreed to pay the indebtedness evidenced by their notes, and also to pay all taxes and special assessments on the premises, and that in default thereof the principal sum should at the option of the holder of the notes become immediately due and payable and be recoverable by foreclosure, and that all expenses paid or incurred in behalf of a complainant in the foreclosure, including certain solicitor's fees and other named expenses, should be paid by them or become an additional lien and be taxed as costs in any foreclosure decree; that the Hammann mortgage (copy attached to and made a part of the cross-bill) also provided for the appointment of a receiver and for the application of the income of the premises to said indebtedness; that only $650 have been paid on the $1,300 due for the 1927 taxes and default has been made in the covenant to pay all the taxes due before May 1, in each year; that interest coupons on both principal notes for the interest from April 12, 1929, to October 12, 1929, are unpaid and in default; that because of the default in the payment of said taxes and interest, cross complainant, on October 16, 1929, elected to declare the entire principal indebtedness immediately due and payable; that there is now due to him in principal and interest the total sum of $15,412.50, together with certain other interest; that he has made disbursements for foreclosure minutes, etc.; that on September 26, 1925, Juul and wife, by their trust deed (Brost mortgage) of that date, recorded September 26, 1925, conveyed the premises to a named trustee, to secure their promissory note for $27,000 due on or before seven years with six per cent interest, payable semiannually;

that on March 16, 1929, they conveyed the premises by quitclaim deed, duly recorded, to the State Bank of Chicago, which deed is in the nature of a mortgage; that the Brost mortgage and the deed .to said bank "remain unreleased of record"; but that any lien created by either of said documents and now outstanding "is subsequent, junior and inferior" to the lien of cross complainant. The prayer of the cross-bill is for the appointment of a receiver *pendente lite,* an accounting and the foreclosure of the Hammann mortgage and for "such other and further relief as the nature of the case may require and to the court may seem meet."

In the answer of Mrs. Brost, filed January 23, 1930, to the cross-bill she admits the delivery of the two Hammann principal notes, aggregating $15,000, and coupon notes, and the execution, delivery and recording on April 21, 1926 of the Hammann mortgage securing them; demands strict proof of the allegations as to the ownership of said notes and mortgage and as to the application of the proceeds of the notes to the discharge of the Brown indebtedness and mortgage and that it was done at the direction of Juul and wife and in accordance with their written agreement, as charged; insists that cross complainant, "having failed to furnish her with any information in regard to said written agreement," should not upon this hearing have any benefit thereof; denies that cross-complainant became subrogated to all the rights of the former owner of the Brown mortgage and notes; demands strict proof that the Hammann loan was made for the sole purpose of refunding the indebtedness secured by the Brown mortgage; denies that any subrogation was made or created in favor of cross complainant by the terms of the Brost mortgage, or that by virtue thereof Juul and wife reserved the right and were permitted to negotiate a new loan of $15,000, and

avers that Juul and wife had the right to negotiate said new loan *only* in case they "complied strictly with the terms and conditions of the rider" attached to said Brost mortgage; denies that cross complainant obtained any priority over the lien of the Brost mortgage, or that she (Mrs. Brost), by accepting it, agreed that the Hammann mortgage and notes should be a first lien on the premises, etc.; avers that whatever agreement was made by Juul and wife in connection with the execution and delivery of the Hammann mortgage "was not binding upon her," that the Brown mortgage and notes "were paid, cancelled and surrendered" to Niels Juul and said mortgage released of record, that cross complainant "was a volunteer without any interest in the property to protect" when the Hammann mortgage was made, that he "was under no compulsion of any kind to pay the indebtedness" evidenced by the Brown notes and mortgage, and that he "acted in utter disregard of the agreement then of record between this cross defendant (Mrs. Brost) and Niels Juul with reference to the replacement of any incumbrance then and there existing *which at that time was prior to that of this cross defendant";* and Mrs. Brost further denied that the lien of her mortgage is subsequent, junior and inferior to that of the Hammann mortgage, as alleged.

Among other findings in the decree are the following:

That Juul and wife executed and delivered the Hammann mortgage and notes; that the mortgage was recorded on April 21, 1926; that Hammann is the legal owner for a valuable consideration of the mortgage and notes; that the loan and indebtedness evidenced thereby "was used, applied and paid to satisfy, discharge and release the indebtedness" secured by the Brown mortgage, recorded May 13, 1921, "and for no other purpose, at the express request and direction of

Juul and wife, the then owners in fee of the premises,'' in accordance with the provisions of their written agreement, by virtue of which the legal holder of said notes, secured by the Hammann mortgage, *''was subrogated* to all the rights of the legal holder'' of the Brown mortgage and notes secured thereby; that the Hammann notes and mortgage were executed by Juul and wife, ''for the sole purpose of *refunding the indebtedness''* secured by the Brown mortgage ''in accordance with the right'' given to said Juul under the terms and provisions of the Brost mortgage, recorded September 29, 1925; that in and by the provisions of the Brost mortgage Juul and wife ''reserved the right and were permitted to negotiate a new loan of $15,000, to be secured by their notes and trust deed on said property, for the purpose of so refunding the indebtedness,'' so secured by the *Brown* mortgage, ''the lien of which said *new* trust deed, and the indebtedness of $15,000 secured thereby, *should have priority* over the lien'' of the *Brost* mortgage; and that Mrs. Brost, complainant and cross defendant herein, ''by accepting'' the Brost mortgage, which contained said provisions so permitting the making of the new Hammann mortgage for said purposes, ''thereby agreed that the lien of such new trust deed (Hammann mortgage), and the notes evidencing the indebtedness of $15,000, should be and remain a first lien upon the premises'' and that the lien of the Brost mortgage should be subject and inferior thereto.

That when the Hammann mortgage was recorded the Brown mortgage was a lien prior and superior to the lien of the Brost mortgage; that shortly after the recording of the Brost mortgage (September 29, 1925), Mrs. Brost left the State of Illinois and was absent therefrom until after the cross-bill herein was filed (November 13, 1929); that when she received the Brost mortgage she ''understood'' that the Brown mortgage

"was a prior lien thereto" and that Juul and wife, or the owner of the property, could refund the indebtedness secured by the Brown mortgage "with a new first lien for like amount," as provided in the mortgage owned by her; that, although the method of refunding the indebtedness secured by the Brown mortgage was not followed literally, "the method actually pursued . . . did not injuriously affect any of her rights as the owner of the indebtedness secured by her junior trust deed, and had the same effect in equity as if the indebtedness had been refunded strictly in accordance with the provisions of her trust deed," and that she "was in fact benefited, by reason of the reduction of the interest rate in the new notes and trust deed now owned by cross complainant"; that "equity looks to the substance of the transaction and not to the form"; and that "there is no proof of any injury sustained by Mrs. Brost, by reason of the method of refunding actually adopted."

That cross complainant's exhibit 6 (being the subrogation agreement) "was a valid subrogation agreement," and he, therefore, "was not a volunteer" in the payment of the indebtedness secured by the Brown mortgage, but "was subrogated to all of the rights of priority in lien of said Brown mortgage"; that the defense urged by Mrs. Brost (that because no new notes were sent to her and she had no knowledge of the making of the new trust deed and the payment of the old trust deed, or of the subrogation agreement because of the fact that it was not recorded), "is without merit for the reason that it is not shown by the evidence that she was injured"; that Juul and wife "had the right" to make new notes and a new trust deed of $15,000, and from the proceeds thereof to pay off and release the Brown mortgage for a like amount, and "to subrogate the persons, loaning said $15,000 for said purpose, to the rights of the owner of the notes secured by the

Brown mortgage, by written agreement to that effect, without notice to Mrs. Brost''; and that the provisions of the Brost mortgage, providing for refunding of the indebtedness secured by the Brown mortgage ''was an attempt merely to grant the right to the owner of replacing and refunding the indebtedness secured by the Brown mortgage, as the testimony showed her understanding was that she (Mrs. Brost) should continue to hold a *second* lien on the property as her security.''

That default was made in the terms and conditions of the Hammann mortgage; that Hammann, as holder of the notes, declared the whole amount due thereunder immediately due and payable; that at the time of the filing of the cross-bill only $650 had been paid on the $1,300 levied for the 1927 taxes; that interest upon the notes from April 12, 1929, to October 12, 1929, was unpaid; and that on December 4, 1929, after the filing of the cross-bill herein, Niels Juul died testate and executors of his estate were appointed. (Here is stated the account, showing that there is due to cross complainant the total sum of $17,638.17, including items of interest, cost of minutes of title, stenographer's fees, and solicitor's fees in the sum of $840.)

That the Brost mortgage was executed and delivered to secure a principal note, originally for $27,000, payable on or before seven years with interest at six per cent per annum payable semiannually, and providing that partial payments of $500 should be made on each interest due date; that Mrs. Brost is the owner of said note, on which partial payments of $3,000 have been made, and all interest paid up to September 26, 1928; and that default was made in the partial payment of principal, as well as interest, due on March 26, 1929, and Mrs. Brost elected to declare the entire debt immediately due and payable, etc. (Here is stated an account showing that there is due to her the total sum of $28,010.67, including items of interest and solicitor's fees in the sum of $500.)

After reviewing the pleadings and the evidence we are of the opinion that the decree appealed from is sustained by the evidence and the law. We think that the decree is warranted both upon the theory of subordination and that of subrogation. Under the former theory equity will regard the substance of the transaction rather than the form. (*Ogden v. Stevens,* 241 Ill. 556, 565; *Smurr v. Kamen,* 301 Ill. 179, 186; *Roberts v. Doan,* 180 Ill. 187, 190; *Roberts v. McNeal,* 80 Ill. App. 536, 539; *Riegel v. Belt,* 119 Ohio St. 369, 380; *Council Bluffs Sav. Bank v. Towl,* 205 Iowa 1185, 1191.) And Mrs. Brost, having invoked the aid of a court of equity to enforce the lien of her mortgage, must herself do equity. (*Hanson v. Hanson,* 52 N. D. 146, 154; *Oppenheimer v. Szulerecki,* 297 Ill. 81, 87.) We think that the written rider attached to the Brost mortgage clearly discloses that it was the intention of the parties thereto that the Brown mortgage, when it matured, should be renewed as a first mortgage. The method by which this should be brought about was not so important as the accomplishment of it. Apparently, the particular method mentioned was not intended to be exclusive, and, as found by the court and disclosed from the evidence, the method actually pursued did not injuriously affect Mrs. Brost or any of her rights.

And, under the court's findings sustained by the evidence, we think that appellee, as owner of the Hammann notes and mortgage, is clearly entitled to priority of lien over the Brost mortgage by right of subrogation. In *Home Sav. Bank v. Bierstadt,* 168 Ill. 618, 624, it is said: "But in addition to this principle of legal subrogation there exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit

of the security which he has satisfied with the expectation of receiving an equal lien. . . . It is the agreement that the security shall be kept alive for the benefit of the person making the payment which gives the right of subrogation, because it takes away the character of a mere volunteer." (See, also, *Tyrrell v. Ward,* 102 Ill. 29, 37; *Tradesmen's Building & Loan Ass'n v. Thompson,* 32 N. J. Eq. 133, 135; *Cook v. Kelly,* 200 Ala. 133, 134; Jones on Mortgages, 8th Ed., sec. 1114, pp. 559, 560.)

And we do not think there is any merit in the contention of counsel for Mrs. Brost in substance that because Hammann's cross-bill did not specifically pray for subrogation, the decree cannot stand. The allegations of the cross-bill sufficiently disclosed his right to a decree either upon the theory of subrogation or that of subordination, and, in addition to his prayer for the foreclosure of his trust deed, etc., there was a prayer for general relief. In *Kelly v. Kelly,* 293 Ill. 169, 173, it is said: "Under the prayer for general relief a court of equity may give every relief consistent with the case made by the bill. Relief may be granted under the general prayer *different* from that specifically prayed for, when it is consistent with the facts alleged and proved, provided it does not take the defendant by surprise." (See, also, *Struve v. Tatge,* 285 Ill. 103, 111; *Crawford v. Hurst,* 299 Ill. 503, 509; *Maring v. Meeker,* 263 Ill. 136, 146.) And it is not a sufficient answer to this to suggest that the allegations of the cross-bill relative to the Brown mortgage should have been more specific. The point should have been raised by a special demurrer. (*Kirk v. Kirk,* 325 Ill. 296, 305; *Wormley v. Wormley,* 207 Ill. 411, 420; *Williams v. Soutter,* 55 Ill. 130, 132.)

Equally without merit, in our opinion, is the point of laches made by counsel. It is a sufficient answer to state that laches was neither specifically alleged in

Mrs. Brost's answer nor proved by her, as should have been done to make the point available here. (*Turpin v. Dennis,* 139 Ill. 274, 278; *Elting v. First Nat. Bank,* 173 Ill. 368, 392; *Ogden v. Stevens,* 241 Ill. 556, 563.) Furthermore, mere lapse of time, alone, is not sufficient to bar a bill showing equity on its face. (*Schultz v. O'Hearn,* 319 Ill. 244, 248.) And it does not appear that Mrs. Brost was lulled into omitting to do what she might have done, because of Hammann's claimed non-action. (*Cross v. Janes,* 327 Ill. 538, 546; *Simons v. Morris,* 333 Ill. 183, 189.) She filed her original bill to foreclose shortly after her debtor had made default.

The decree of the circuit court of May 5, 1931, should be affirmed, and it is so ordered.

*Affirmed.*

KERNER and SCANLAN, JJ., concur.