383 S.E.2d 831

The CONCERNED LOVED ONES AND LOT OWNERS ASSOCIATION OF BEVERLY HILLS MEMORIAL GARDENS, an Unincorporated Association, by the Following Persons: Mary L. Martin KOON, Ruby Alice Tennant, Milton Cohen, Delores J. Lloyd, Mabel Riffle, William A. Dilgard, Joe Prudnick, Mabel Prudnick, Ruby Tennant and the Class of Members of Said Association; The Above Persons and Association as Representatives of the Class of Lot Owners in, Persons who are to be Buried in, and Relatives and Friends and Loved Ones of Those who are and are to be Buried in, Beverly Hills Memorial Gardens

v.

Richard PENCE, Individually and in his Capacity as President of Beverly Hills Memorial Garden, Inc.; Beverly Hills Memorial Garden, Inc., a Corporation; and Sandridge Coal Company, Inc., a Corporation.

No. CC993.

Supreme Court of Appeals of West Virginia.

July 21, 1989.

James M. Wilson, Richard M. Yurko, Jr., Clarksburg, for Pence and Beverly Hills Memorial Gardens, Inc.

Larry Harless, Thomas Rodd, Charleston, for Concerned Loved Ones and Lot Owners Ass'n of Beverly Hills Memorial Gardens.

Billy B. Atkins, Morgantown, for Sand Ridge Coal Co.

McHUGH, Justice:

This action is before the Court upon certified questions from the Circuit Court of Monongalia County. The plaintiffs are members of the Concerned Loved Ones and Lot Owners Association of Beverly Hills Memorial Gardens. The defendants are Richard Pence, Beverly Hills Memorial Gardens, Inc., and Sandridge Coal Company, Inc.

We have reviewed the arguments of the parties and all matters of record.[1]

## I

On September 24, 1930, seventy acres of land in Monongalia County were acquired by the Beverly Hills Memorial Park Association, a corporation formed for the purpose of establishing a cemetery. Cemetery lots were sold, including many to the plaintiffs and their relatives who are buried at Beverly Hills Memorial Gardens.

On December 3, 1952, the Beverly Hills Memorial Park Association conveyed the seventy acres to the Memorial Gardens Development Corporation. Cemetery lots continued to be sold, and additional areas within the seventy acres were maintained and developed into lots, although unsold. Currently, fifty acres are maintained and developed for cemetery use.

On March 8, 1984, Memorial Gardens Development Corporation sold the seventy-acre tract to the defendant, Beverly Hills Memorial Gardens, Inc. (hereinafter "BHMG"), of which the defendant, Richard Pence, is president.

All of the deeds conveying the property contained language which required the grantee to assume all of the obligations of the grantor to the lot owners and lot purchasers.

In October, 1986, BHMG sold twenty acres to Richard Pence, individually. These twenty acres were not maintained or developed into cemetery lots. Pence did not give notice of this sale pursuant to

---

1. This Court has also reviewed the *amicus curiae* brief of the West Virginia Cemetery Association. tion.

provisions set forth in *W. Va. Code*, 35–5–2 [1967].[2]

Pence caused substantial timber to be cut from the twenty acres he purchased. Pence also leased the twenty acres to Jasper Petitte to mine coal by strip, surface or auger mining, under the name of Sandridge Coal Company, a defendant in this case.

The plaintiffs filed suit in the Circuit Court of Monongalia County upon learning of the sale of the twenty acres and the mining. The Department of Energy required that the mining be suspended, pending the outcome of the plaintiffs' suit. The plaintiffs' suit is based upon several actions in contract, tort, and violations of public policy.

Pence asserted that he may eventually develop the twenty acres into cemetery lots after they are mined. However, he contends that the twenty acres are not part of the cemetery. Furthermore, he maintains that because BHMG is a private, for-profit corporation, operating a perpetual care cemetery, the notice and referendum procedures set forth in *W. Va. Code*, 35–5–2 [1967] do not apply to the sale or his actions on the land.

The defendants moved for summary judgment, and the circuit court, joined by the defendants, certified questions to this Court concerning: (1) whether the notice and referendum procedures of *W. Va. Code*, 35–5–2 [1967] apply to the sale of the twenty acres of land in this case; and (2) whether the plaintiffs have a cause of action

against BHMG and Pence to enjoin the sale of the twenty acres and recover damages related to cemetery desecration.[3]

The circuit court answered these questions in the negative. We agree with the circuit court's answer to question (1) and disagree with the circuit court's answer to question (2).

## II

■ At the outset, we dispose of the plaintiffs' contention having the least merit. The plaintiffs maintain that *W. Va. Code*, 35–5–2 [1967] requires the defendant, BHMG, to give notice before selling the cemetery or any part thereof. *W. Va. Code*, 35–5–2 [1967] provides:

The trustees of any burial grounds, or any incorporated cemetery association whenever it is deemed advisable by such trustees or association, and is not prohibited by the terms of the conveyance, dedication or devise of such grounds, may sell and convey any part of such burial grounds or land of such association, without restriction as to its use, if such sale and conveyance will not render any lot previously sold for burial purposes inaccessible for such purposes, or detach it from the main body of the cemetery. But no such sale shall be made by such trustees or such association unless authorized by a majority of the lot owners present and voting at a general meeting or special meeting, of which meeting and

---

**2.** This statutory provision is discussed in section II of this opinion.

**3.** The following questions were certified by the circuit court to this Court:

1. Do the notice and referendum procedures contained in *W. Va. Code*, § 35–5–2 apply to the sale of unimproved cemetery real estate owned by a private for-profit corporation operating a perpetual care cemetery?

2. Do the plaintiffs have standing and any cause of action to enjoin such sale of real estate, and the clear-cutting and sale of trees and the surface mining of coal, and subsequent private use without legal restriction?

3. Do the plaintiffs have standing and any cause of action against the cemetery corporation and its individual owner for legal and punitive damages based upon desecration of cemetery land, fraud, outrageous conduct,

breaches of contractual duties, breaches of fiduciary and trust duties, and/or violations of public policies?

4. Do the plaintiffs have standing and any cause of action against the surface coal mining corporation which was engaged to mine and commenced mining, and sold some of the above-described coal, (i) to return the proceeds of the sale of the coal, (ii) cease all mining; and (iii) restore the cemetery to its previous condition?

For the reasons stated herein, we need not address these questions in the precise language in which they were certified. "[U]pon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered." *City of Fairmont v. Retail, Wholesale, & Department Store Union*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590–91 (1980).

its object previous notice shall be given by advertising the same as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county in which the cemetery is situated. No desecration shall be made of any grave or monument, or any of the walks, drives, trees, or shrubbery within the enclosure of any burial grounds; nor shall any shaft or entry be made within the enclosure of such burial grounds, or any building be erected therein for any purpose whatever other than cemetery purposes.

The plaintiffs contend that this statutory provision applies to all cemeteries, regardless of who owns and operates the cemeteries. We disagree.

Although privately owned, BHMG is a "public cemetery" because it is open, under reasonable regulations, to the use of the public for the burial of the dead. *See Smith & Gaston Funeral Directors, Inc. v. Dean*, 262 Ala. 600, 608–09, 80 So.2d 227, 234 (1955); *Davie v. Rochester Cemetery Association*, 91 N.H. 494, 495, 23 A.2d 377, 378 (1941); *Parker v. Fidelity Union Trust Co.*, 2 N.J.Super. 362, 390, 63 A.2d 902, 916–17 (Ch.Div.1944). *See also* 14 Am. Jur.2d *Cemeteries* § 2 (1964). BHMG is not an incorporated cemetery *association* and there are no trustees who oversee the operation of the cemetery.

*W.Va.Code*, 35–5–1 [1931] provides:

Where any conveyance, dedication or devise was made of land for burial grounds, to any *church, religious sect, society, congregation, or denomination,* or to any *benevolent, fraternal, patriotic, literary, temperance, or charitable society, order, lodge or association that has dissolved or become extinct* in the county and vicinity where such burial grounds are situated, and the trustees of same have removed or died, the circuit court of such county, upon the application of five or more persons having relatives buried in such burial grounds, shall appoint five trustees, who for the time being and their successors shall be in-

vested with all the powers necessary to promote and carry out the object and purposes named in such conveyance, dedication or devise.

(emphasis supplied) Similar to *Code*, 35–5–2, this section does not include private, profit-making corporations, such as BHMG.

*W.Va.Code*, 35–5A–2 [1973] states:

No *person* shall operate or continue to operate a *perpetual care cemetery* in West Virginia unless a permanent endowment care fund has been established, maintained and administered as required by this article. The income from the permanent endowment care fund so established shall be used only as permitted by this article.

(emphasis supplied) Article 5A of chapter 35 demonstrates a legislative intent to distinguish between those who own and operate *any* cemetery and those who operate a cemetery as trustees or as an association for a religious, benevolent or similar type organization. *W.Va.Code*, 35–5A–2 [1973] defines "person" as meaning "any corporation, company, partnership, *individual,* association or other entity owning or operating a cemetery for the disposition of human remains." (emphasis supplied ) *W.Va. Code*, 35–5A–1 [1973] defines "perpetual care cemetery" as "a cemetery which advertises or represents *to the public* in any manner that it provides perpetual care or maintenance for burial grounds, mausoleums or columbaria and the fixtures attached thereto or which sells or offers to sell any interment right which is to be perpetually cared for or maintained." (emphasis supplied)

It is clear, then, that when the legislature intends to impose requirements upon *all* cemeteries, the language of the statute will so indicate. "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius,* the express mention of one thing implies the exclusion of another, applies." Syl. pt. 3, *Manchin v. Dunfee,* 174 W.Va. 532, 327 S.E.2d 710 (1984). Furthermore, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be

gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975). *Accord, Kimes v. Bechtold,* 176 W.Va. 182, 184, 342 S.E.2d 147, 150 (1986). *See generally* 2A N. Singer, *Sutherland [on] Statutes and Statutory Construction* §§ 47.23, 51.01–.03 (Sands 4th ed. rev. 1984 and Supp.1989) (discussing, respectively, each of these two rules of statutory construction).

Obviously, *W.Va.Code,* 35–5–2 [1967] does not apply to all cemeteries, but only to those which are enumerated in the statute. Private, profit-making corporations are not among those entities enumerated in *W.Va. Code,* 35–5–2 [1967]. Therefore, BHMG, a private, profit-making cemetery, is not within the ambit of *W.Va.Code,* 35–5–2 [1967].

Accordingly, we hold that the provisions of *W.Va.Code,* 35–5–2 [1967] apply only to the types of entities set forth in *W.Va. Code,* 35–5–1 [1931].

### III

 We now address the primary issue that remains, that is, whether the plaintiffs have a cause of action against BHMG and Pence to enjoin the sale of the twenty acres and recover damages related to cemetery desecration.

In *Ritter v. Couch,* 71 W.Va. 221, 76 S.E. 428 (1912), this Court discussed the unique status of cemeteries in society, as well as their necessity. *Ritter* involved an attempt by a municipal corporation to sell a municipally-owned public cemetery. Relatives of those buried at the municipally-owned public cemetery brought an action to void the sale. The trial court voided the sale and this Court affirmed the trial court's decree, concluding that

> [w]hen once property has been dedicated for a special purpose, as for a burial ground, or where a city has dedicated it for that purpose, and persons have acted upon the faith of such dedication by burying their loved ones there, the city can-

not devote the property to any other purpose.

71 W.Va. at 228, 76 S.E. at 431. *See Haslerig v. Watson,* 205 Ga. 668, 683, 54 S.E.2d 413, 424 (1949); *Proprietors of Mount Auburn Cemetery v. Mayor & Aldermen of City of Cambridge,* 150 Mass. 12, 16, 22 N.E. 66, 68 (1889); *Hines v. State,* 126 Tenn. 1, 4–5, 149 S.W. 1058, 1059 (1911).

*Ritter* recognized that an action in equity lies for desecration of a grave which has been dedicated for cemetery purposes. 71 W.Va. at 228, 76 S.E. at 430. This action in equity emanates from the concept that a cemetery corporation, in effect, becomes a trustee to sell and convey burial lots upon dedication of its land to cemetery purposes. It has been held that "[t]hose who administer the affairs of a cemetery are in reality trustees, and are subject to all of the rules of law respecting the duties and liabilities of a trustee." Syl. pt. 1, *Burke v. Gunther,* 128 N.J.Eq. 565, 17 A.2d 481 (Ch. 1941). *See Oakland Cemetery Co. v. Peoples Cemetery Association,* 93 Tex. 569, 574, 57 S.W. 27, 29 (1900). *See also* 14 Am.Jur.2d *Cemeteries* § 16 (1964).

In deciding whether activity conducted by a cemetery corporation within the boundaries of a cemetery are permissible, courts will determine whether the activity is so unrelated to cemetery purposes that it will not be sanctioned without legislative authority. For example, it has been held that the operation of a greenhouse on cemetery land would not affect the cemetery's tax-exempt status because such operation was useful in beautifying the cemetery. Syl. pt. 2, *State v. Lakewood Cemetery Association,* 93 Minn. 191, 101 N.W. 161 (1904).

However, mining operations, similar to those in which the defendants in this case desire to engage, have been prohibited if they take place in or under cemetery grounds. *Briggs v. Bloomingdale Cemetery Association,* 113 Misc. 685, 692, 185 N.Y.S. 348, 353 (Sup.Ct.1920), *aff'd,* 208 A.D. 761, 202 N.Y.S. 918 (1924).[4]

---

**4.** We recently addressed the adverse effect of mining operations on grave sites in *Bennett v. 3*

*C Coal Co.,* 180 W.Va. 665, 379 S.E.2d 388 (1989).

Clearly, "[e]quity has jurisdiction to restrain the removal of *or interference with* the remains of the dead rightfully buried in a cemetery." Syl. pt. 1, *Sherrard v. Henry*, 88 W.Va. 315, 106 S.E. 705 (1921) (emphasis supplied). In *Sherrard*, this Court pointed out that "one who acquires a cemetery lot has some interest therein. He does not acquire the fee in the land. His interest is more in the nature of a perpetual easement[.]" *Id.* at 320, 106 S.E. at 707. This "perpetual easement" gives rise to an action for damages resulting from desecration of a grave or a body. As this Court stated in syllabus point 1 of *England v. Central Pocahontas Coal Co.*, 86 W.Va. 575, 104 S.E. 46 (1920):

> While strictly considered there is no right of property in a dead body, nevertheless the right to bury a corpse *and preserve the remains* is a legal right, which in this country is regarded as a quasi right in property, the violation of which is cognizable in and may be redressed at the suit of near relatives by an action on the case against the wrongdoer.

(emphasis supplied) *Accord, Bennett v. 3 C Coal Co.*, 180 W.Va. 665, ——, 379 S.E.2d 388, 392 (1989).

Furthermore, an action for trespass may be maintained by one who owns the land for burial or has a burial easement therein. *West View Corp. v. Alexander*, 83 Ga.App. 810, 813, 65 S.E.2d 38, 40 (1951).

We conclude that the plaintiffs would have a cause of action against BHMG and Pence to recover damages related to cemetery desecration if the twenty acres at issue in this case are part of the cemetery.[5] For this reason, the circuit court must address the fundamental question pertaining to this issue: whether the twenty acres are part of the cemetery.

The December 3, 1952 deed, which reflected the conveyance from the Beverly Hills Memorial Park Association to the Memorial Gardens Development Corporation, in addition to describing the property as "containing seventy acres, more or less," made numerous references to "cemetery" and "burial spaces."

Similarly, the exhibit attached to the March 8, 1984 deed, which reflected the conveyance from the Memorial Gardens Development Corporation to BHMG, described the property as "containing seventy acres, more or less." Moreover, this deed stated that "the Grantee [BHMG] assumes and agrees to perform all the obligations of Grantor [Memorial Gardens Development Corporation] to the said lot owners and contract purchasers."

In syllabus point 3 of *In re Hillcrest Memorial Gardens*, 146 W.Va. 337, 119 S.E.2d 753 (1961), this Court held that:

> A cemetery is a place where dead bodies of human beings are buried; an area of ground set apart for the burial of the dead, either by public authority or private enterprise. It includes not only lots for depositing the bodies of the dead, but also such avenues, walks and grounds as may be necessary for its use, or for shrubbery and ornamental purposes.

*See* 14 Am.Jur.2d *Cemeteries* § 1 (1964).

The plaintiffs contend that the entire seventy acres in this case constitute the cemetery because all seventy acres have been "dedicated" for cemetery purposes. The plaintiffs point out that dedication may occur by deed.

> It is well settled that land may be dedicated to the public for cemetery purposes. In the absence of a statute, no particular form or ceremony is requisite to accomplish such a dedication. The intention of the owner of the land to dedicate it for a pubic cemetery, together with the acceptance and use of the same by the public, or the consent and acquiescence of the owner in the long-continued use of his lands for such purpose, are sufficient. *The dedication may be made by grant or written instrument,* but it is not necessary that any conveyance be made or that there be any person

---

5. "A desecration, generally, is defined as a violation of the sanctity of a place or a profanation thereof." *Mailhos v. Osbon*, 201 So.2d 108, 110 (La.Ct.App.1967). *See also* "Desecrate," *Black's Law Dictionary* 401 (5th ed.1979).

capable of taking a conveyance otherwise than in trust.

14 Am.Jur.2d *Cemeteries* § 14 (1964) (emphasis supplied) (footnotes omitted). *See Davidson v. Reed,* 111 Ill. 167, 169 (1884).

In this case, however, there is nothing on the face of the deeds which suggests that the grantees' obligations to the cemetery lot owners extend to all seventy acres, including the twenty acres in question.

The plaintiffs point to the tax-exempt status that all seventy acres have enjoyed until the twenty acres were conveyed to Pence, as well as brochures advertising and promoting the cemetery, some of which refer to seventy acres of land.

It is well established that dedication of land for a public cemetery requires, in addition to the acceptance and use by the public, an *intention* on the part of the owner to dedicate. *Ledlow v. City of Pell City,* 497 So.2d 86, 88 (Ala.1986); *Garland v. Clark,* 264 Ala. 402, 405–06, 88 So.2d 367, 370 (1956); *Arlington Cemetery Corp. v. Bindig,* 212 Ga. 698, 703, 95 S.E.2d 378, 382 (1956); *Haslerig v. Watson,* 205 Ga. 668, 678, 54 S.E.2d 413, 421 (1949); *Wormley v. Wormley,* 207 Ill. 411, 415–16, 69 N.E. 865, 867 (1904); *Magnolia Memorial Gardens, Inc. v. Denton,* 317 So.2d 38, 42 (Miss.1975); *Abrams v. Lakewood Park Cemetery Association,* 355 Mo. 313, 324, 196 S.W.2d 278, 283 (1946); *Eugene Pioneer Cemetery Association v. Spencer Butte Lodge No. 9,* 228 Or. 13, 50–51, 363 P.2d 1083, 1100 (1961); *Andrus v. Remmert,* 136 Tex. 179, 182, 146 S.W.2d 728, 729 (1941).

An intention to dedicate may be inferred from the conduct of the landowner. It has been stated: "An implied common law dedication arises from some act or course of conduct from which the law will imply an intention on the part of the owner of the property to dedicate it to the public use." *Roundtree v. Hutchinson,* 57 Wash. 414, 415–16, 107 P. 345, 346 (1910). This Court, in addressing the issue of implied dedication, has held that "[t]o make out a case of dedication of private property to public use by implication, the facts relied upon to establish it must be of such character as

clearly show the owner intended such dedication and they must be clearly and fully proved." Syl. pt. 3, *Hicks v. City of Bluefield,* 86 W.Va. 367, 103 S.E. 323 (1920).

The question of intent to dedicate private property to public use is a factual question, unless uncontroverted, and must be determined by the trier of the facts, which is the circuit court judge or jury in this case. *Hamerly v. Denton,* 359 P.2d 121, 125 (Alaska 1961); *Fort Smith & Van Buren Bridge District v. Scott,* 111 Ark. 449, 454, 163 S.W. 1137, 1138 (1914); *Henry Cowell Lime & Cement Co. v. State,* 18 Cal.2d 169, 173, 114 P.2d 331, 333 (1941); *Melwood, Inc. v. DeKalb County,* 255 Ga. 247, 248, 336 S.E.2d 571, 573 (1985); *Gibson v. Ocker,* 138 Ind.App. 438, 442, 214 N.E.2d 395, 398 (1966); *Donaldson's Heirs v. City of New Orleans,* 166 La. 1059, 1063, 118 So. 134, 135 (1928); *Baker v. Petrin,* 148 Me. 473, 480, 95 A.2d 806, 810 (1953); *Wojahn v. Johnson,* 297 N.W.2d 298, 307 (Minn.1980); *Bingham v. Kollman,* 256 Mo. 573, 589, 165 S.W. 1097, 1100 (1914); *Langan v. Whalen,* 67 Neb. 299, 302, 93 N.W. 393, 394 (1903); *Wason v. Nashua,* 85 N.H. 192, 200, 155 A. 681, 686 (1931); *Osterweil v. City of Newark,* 116 N.J.L. 227, 231–32, 182 A. 917, 920 (1936); *In re Brigham Street,* 136 Misc. 808, 809, 241 N.Y.S. 156, 157 (1930); *Russell v. Garner,* 205 N.C. 791, 792, 172 S.E. 405, 406 (1934); *Peterson v. Marianna Borough,* 310 Pa. 524, 530, 165 A. 838, 840 (1933); *Chafee v. City of Aiken,* 57 S.C. 507, 517, 35 S.E. 800, 803 (1900); *City of Knoxville v. Ambrister,* 196 Tenn. 1, 3, 263 S.W.2d 528, 528 (1953); *Priolo v. City of Dallas,* 257 S.W.2d 947, 952 (Tex.Civ.App.1953); *Town of Springfield v. Newton,* 115 Vt. 39, 44, 50 A.2d 605, 609 (1947); *Humphrey v. Krutz,* 77 Wash. 152, 155, 137 P. 806, 807 (1913). *See* 11 E. McQuillin, *The Law of Municipal Corporations* § 33.41 (S. Flanagan 3d ed. rev.1983).

Consequently, it must be determined whether or not the entire seventy acres have been dedicated to cemetery purposes. Assuming, without deciding, that the entire seventy acres are a part of the cemetery, clearly, the plaintiffs would have a cause of

action for unlawful desecration as stated previously in this opinion.

Therefore, when land has been dedicated to cemetery purposes, the next of kin of those buried in the cemetery, as well as those who own land for burial in the cemetery, have a cause of action to prevent, or recover damages resulting from, the unlawful desecration of such cemetery.

Based upon the foregoing, the plaintiffs would clearly be entitled to injunctive relief, if the evidence at trial demonstrates an intent to dedicate all seventy acres, including the twenty acres in question, to use as a cemetery; the injunction would prevent the defendants from further removal of timber and from conducting mining operations.

The damages that the plaintiffs would be entitled to in this case may be compensatory or only nominal, depending upon the nature of the harmful acts as the evidence at trial demonstrates. It has been held that in this type of action, nominal damages at least, are awardable, and compensatory damages may be recovered if actual damage is shown. *Matthews v. Forrest*, 235 N.C. 281, 283, 285, 69 S.E.2d 553, 555, 556 (1952). *See Orr v. Dayton & M. Traction Co.*, 178 Ind. 40, 47, 96 N.E. 462, 464 (1911); *Michels v. Boruta*, 122 S.W.2d 216, 221 (Tex.Civ.App.1938); *Frost v. Columbia Clay Co.*, 130 S.C. 72, 76, 124 S.E. 767, 768 (1924). *See also* annotation, *Action at Law for Desecration of Grave*, 172 A.L.R. 554, 576 (1948).

The principle that "[d]amages for mental distress may be recovered by the next of kin for the disturbance or desecration of a relative's grave[,]" syl. pt. 3, *Bennett v. 3 C Coal Co.*, 180 W.Va. 665, 379 S.E.2d 388 (1989), is equally applicable here. Furthermore, punitive damages may be recovered in this case if the plaintiffs can prove that the defendants' conduct was willful, wanton, reckless, or malicious. "In order to secure punitive damages, a defendant must be shown to have engaged in a wilful, wanton, reckless, or malicious act." Syl. pt. 5, *Bennett.*

We are reminded of the words of Judge Brannon, sensitively addressing the character of the cemetery and its place in human nature.

> If relatives of blood may not defend the graves of their departed[,] who may? Always the human heart has rebelled against the invasion of the cemetery precincts; always has the human mind contemplated the grave as the last and enduring resting place after the struggles and sorrows of this world.

*Ritter v. Couch*, 71 W.Va. 221, 227, 76 S.E. 428, 430 (1912).

Accordingly, in the event that the twenty acres at issue in this case are determined by the trier of the facts to have been dedicated to cemetery purposes, then the certified question of whether the plaintiffs have a cause of action against BHMG and Pence to enjoin the sale of the twenty acres and to recover damages related to cemetery desecration is answered in the affirmative.[6]

---

**6.** We note that the question of whether the plaintiffs have a cause of action against Sandridge Coal Company to restore the twenty acres to their previous condition and to return the proceeds from the sale of the mined coal necessarily follows the disposition of the plaintiffs' action against BHMG and Pence, who leased the twenty acres at issue to Sandridge Coal Company. Clearly, the equitable remedies prohibiting desecration of the cemetery would afford the plaintiffs a remedy against Sandridge Coal Company.

The plaintiffs, in attempting to recover the proceeds from the mined coal, rely on *West Virginia Department of Highways v. Roda*, 177 W.Va. 383, 388, 352 S.E.2d 134, 140 (1986), wherein we stated, "[w]here a trespass is willful,

the trespasser shall pay the full value of the mineral at the time he sells or uses it." However, many of the issues in this proceeding must be resolved by the circuit court with regard to: (1) whether the twenty acres have been dedicated to cemetery purposes; (2) if they have been dedicated, whether the plaintiffs possess an ownership interest in and to the minerals within the twenty acres which would allow them to recover such proceeds; and (3) whether Sandridge Coal Company is a willful trespasser.

The plaintiffs also refer us to *W.Va.Code*, 22A–3–22(d)(4) [1985], which prohibits surface mining operations within one hundred feet of a cemetery. Again, this issue must be resolved by the circuit court or even in an administrative proceeding involving the Department of Energy. *See W.Va.Code*, 22A–3–22(b) [1985].

This case is remanded to the Circuit Court of Monongalia County for further proceedings consistent with this opinion.

Having answered the certified questions, this case is dismissed from the docket of this Court.

Certified questions answered.