533 S.E.2d 675

**Linda McCARTNEY, Individually and as Treasurer of the Wilson Cemetery Fund, Plaintiff Below, Appellee,**

v.

**Gretchen LESTER, Individually; Gretchen Lester, as Attorney in Fact for Johanna Lester; and Linda Lester Crawford and Johanna Lester, Individually; Estate of L. Wayne Lester, Deceased; Jon Weldon Lamb, Individually; and Paul Morgan Lester, Individually, Defendants Below,**

**Gretchen Lester, Johanna Lester and Linda L. Crawford, Defendants Below, Appellants.**

**No. 27256.**

Supreme Court of Appeals of West Virginia.

Submitted May 3, 2000.

Decided June 21, 2000.

Orton A. Jones, Esq., Hedges, Jones, Whittier & Hedges, Spencer, West Virginia, Attorney for Appellants.

Mark G. Sergent, Esq., Law Office of Mark G. Sergent, Spencer, West Virginia, Attorney for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Calhoun County entered on June 22, 1999. In that order, the circuit court found that a cemetery located off Pink Road in Calhoun County, West Virginia, on property owned by the Lester family, the appellants and defendants below, was dedicated to the public. Accordingly, the circuit court appointed trustees to operate and govern the cemetery.

In this appeal, the Lester family contends that the evidence does not support the circuit court's finding that the cemetery was dedicated to the public. The Lesters further assert that the circuit court erred by appointing a panel of trustees to govern and operate the cemetery. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is reversed.

I.

The cemetery which is the subject of this action was first established in 1885 with the burial of Joseph Wilson, a Civil War veteran. At that time, the farm on which the cemetery is located was owned by Joseph Wilson's family. In 1895, the property was trans-

ferred by deed to Elizabeth Lester. By then, there were four grave sites on the property. However, the deed which transferred the property to Elizabeth Lester did not mention the grave sites or the existence of a cemetery.

Thereafter, friends of Elizabeth Lester began asking for permission to bury deceased family members in the cemetery. Both Elizabeth Lester and her son, Kenna Lester, who inherited the property from his mother, allowed others in the community to be buried in the cemetery. Kenna Lester's heirs, who are the appellants in this case, acquired the property from him in 1972. They have continued to permit members of the community to bury their loved ones in the cemetery. Thus, over the course of 110 years, more than sixty people have been buried in the cemetery.

In 1979, Pearl Daugherty, who had relatives buried in the cemetery, established a banking account to collect donations for upkeep of the cemetery. The Lester family was not involved with the bank account,[1] but continued to maintain and take care of the cemetery themselves. In 1991, Pearl Daugherty gave control of the bank account to her niece, Linda McCartney, who is the appellee and plaintiff below in this action. After Ms. McCartney took over the bank account, disputes over the cemetery began to arise.

Ms. McCartney took the position that approval from the Lester family was not needed before burying someone in the cemetery. As a result, at least one person was buried in the cemetery without the permission of the Lester family. In addition to this dispute, there was also disagreement between Ms. McCartney and the Lesters about fencing the cemetery perimeter.[2]

On October 26, 1998, Ms. McCartney filed this action in the Circuit Court of Calhoun County against the Lesters alleging that the cemetery is a public cemetery which was acquired from the Lesters by adverse possession. Ms. McCartney claimed that she had standing to file the suit because she has relatives buried in the cemetery and because she is the sole signatory on the bank account established by her aunt for maintenance of the cemetery.

Following a bench trial, the circuit court found that Ms. McCartney had not shown exclusivity of possession which is necessary to prove adverse possession.[3] However, the court did find that the cemetery was dedicated to the public long before the parties to this action became involved in the matter. Accordingly, the circuit court established a trust to oversee the use and operation of the cemetery pursuant to W.Va.Code §§ 35–5A–1 to –8 (1973). In addition, the circuit court barred the parties from ever serving as trustees. The circuit court further ordered that five of the remaining grave plots be allotted to Ms. McCartney, and another five allotted to the Lester family. Finally, the court ordered that a parking lot of sufficient size for eight vehicles be located outside the cemetery on the Lesters' property.

## II.

The primary issue in this case is whether the circuit court erred by ruling that the cemetery located on the Lesters' property has been dedicated to the public. The Lesters argue that the cemetery should not have been declared a public cemetery because there is no express grant or reservation relating to the cemetery in any deed; nor is there any evidence of express or implied dedication of the cemetery to the public. To the contrary, Ms. McCartney asserts that by allowing persons in the community to bury their loved ones in the cemetery for more than one hundred years, the Lester family has shown an intention to dedicate the cemetery to the public.

The term "dedication" has been used to denote the setting aside of land for public use, and it is well settled that land may be dedicated to the public for cemetery purposes. 14 Am.Jur.2d *Cemeteries* § 14

---

1. It appears that Paul Lester occasionally contributed money to the bank account.

2. The cemetery encompasses close to a quarter acre of land.

3. The circuit court did find that a marker placed in the cemetery by Homer Daugherty had given him adverse possession over the two plots it reserves.

(1964). The dedication may be made in writing, but it is not necessary. *Id.* Thus, the fact that the cemetery has not been mentioned or reserved in any deed is of no consequence.

■ To effectively dedicate land to public use, it must be shown that the land owner intended to dedicate the land to public use and the public has accepted the same. 23 Am.Jur.2d *Dedication* § 23 (1983). While the intention to dedicate land for public purposes may be implied from acts or conduct of the land owner, the evidence offered to establish the dedication must be clearly proven. *Id.* In Syllabus Point 3 of *Hicks v. City of Bluefield,* 86 W.Va. 367, 103 S.E. 323 (1920), this Court stated,

> To make out a case of dedication of private property to public use by implication, the facts relied upon to establish it must be of such character as clearly show the owner intended such dedication, and they must be clearly and fully proved.

■ More recently, this Court, acknowledging that *Hicks* is still the law in this State, explained that, "It is well established that dedication of land for a public cemetery requires, in addition to the acceptance and use by the public, an *intention* on the part of the owner to dedicate." *Concerned Loved Ones and Lot Owners Ass'n of Beverly Hills Memorial Gardens v. Pence,* 181 W.Va. 649, 655, 383 S.E.2d 831, 837 (1989) (citations omitted). This Court also stated in *Pence* that "[t]he question of intent to dedicate private property to public use is a factual question, unless uncontroverted, and must be determined by the trier of facts, which is the circuit court judge or jury in this case." *Id.* (citations omitted). As this Court has noted, such factual determinations are subject to a "clearly erroneous" standard of review. *Fraternal Order of Police, Lodge Number 69 v. City of Fairmont,* 196 W.Va. 97, 100, 468 S.E.2d 712, 715 (1996) (providing that appellate review proceeds under "clearly erroneous" standard whenever a trial court decides factual matters that are essential to ascertaining a party's rights in a particular situation).

■ The record in this case shows that the circuit court heard several days of testimony, admitted several documents into evidence, and even viewed the subject property in an effort to determine the status of this cemetery. Unfortunately, a considerable amount of the testimony focused upon the more recent events that occurred at the cemetery, specifically the attempts by the parties to fence the cemetery's perimeter. Although the record contains some testimony concerning how certain persons came to be buried in the cemetery, the testimony is inconsistent with regard to the Lester family's granting of permission to members of the community to bury their loved ones in the cemetery. While some of the witnesses maintained that permission was always granted, others testified that permission of the Lester family was not needed. In any event, simply granting permission for members of the community to be buried in the cemetery does not necessarily show an intention to dedicate the property to the public.

For instance, in *MacCorkle v. City of Charleston,* 105 W.Va. 395, 142 S.E. 841 (1928), this Court held that the mere use of a private alley by the public did not establish that the owners of the alley vested any right in the alley to the public. In other words, in order to establish that the alley had been dedicated to the public, the city needed to show more than just a permissive use. *See* 23 Am.Jur.2d *Dedication* § 35 (1983). We, of course, recognize that the permissive use in this case is quite different from that in *MacCorkle.* However, this same principle of law has been applied in situations similar to the case *sub judice.*

In *Phipps v. Frances,* 267 Ky. 203, 101 S.W.2d 924 (1937), the plaintiff filed suit to enjoin a church from burying or permitting others to be buried on property she had conveyed to it. One of the defenses asserted by the church was the fact that the plaintiff had buried her sister on the property before she conveyed it to the church. The plaintiff had also through express or implied consent allowed sixteen others to be buried on the property. In holding that the plaintiff had not dedicated the property as a cemetery for public use, the court stated:

A person may consent to a member of his or her family being buried in their yard or garden, but in no light of reasoning could it be said that such act would constitute a dedication of such premises as a public cemetery or burial ground. Not only so, but even if one should consent to the burial of a person of no kin to them on their premises, such use of the premises would be a permissive one and would not constitute a waiver of their right to object to any other body being buried on the premises.

*Phipps*, 267 Ky. at 207–08, 101 S.W.2d at 927.

Our review of the evidence in this case reveals no clear intention on the part of the Lester family to dedicate this cemetery to the public. The evidence in this case merely shows that the Lester family has graciously allowed members of their community to be buried on their property for more than one hundred years. The Lesters do not dispute that members of the community who have loved ones buried in the cemetery have a right to visit, decorate, and care for the existing graves and gravestones. They simply contend that they have not given up the exclusive right to determine who can be buried on their property. We agree. Absent some other evidence, we do not believe that by granting permission, even on a continual basis, to persons in the community to bury their loved ones in this cemetery, it can be concluded that the Lester family dedicated this cemetery to the public. Thus, the circuit court clearly erred in finding that the Lester family dedicated this cemetery to the public and in appointing trustees to govern the cemetery. Accordingly, the final order of the Circuit Court of Calhoun County entered on June 22, 1999, is reversed.

Reversed.

Justice SCOTT, deeming himself disqualified, did not participate in the decision of this case.

Judge TOD J. KAUFMAN, sitting by temporary assignment.