664 S.E.2d 692

**In re Petition for APPOINTMENT OF TRUSTEES FOR WOODLAWN CEMETERY.**

**No. 33458.**

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2008.

Decided June 2, 2008.

Gregory H. Schillace, Esq., Thelma E. Poe, Esq., Clarksburg, WV, for Woodlawn Cemetery Co. and Jack Lee Decker.

Neal J. Hamilton, Esq., Fairmont, WV, for Court–Appointed Trustees of Woodlawn Cemetery.

## PER CURIAM.

In this appeal from the Circuit Court of Marion County, we are asked to examine two orders that appointed five individuals as trustees over a cemetery. As set forth below, we affirm the circuit court's orders.

### I.

The parties in this case dispute who should oversee the care, maintenance and operation of Woodlawn Cemetery in Marion County, West Virginia. The appellants are individuals who hold themselves out to be the officers of the Woodlawn Cemetery Company. The appellees are five individuals with relatives buried in the cemetery.

The record indicates that the first burial on the land that would become Woodlawn Cemetery occurred in 1875.[1] The appellant, Woodlawn Cemetery Company, was formed to oversee a cemetery on the land in 1885, and the company was formally incorporated and registered with the Secretary of State as a corporation in 1935.[2]

Since 1929, cemeteries have been allowed to create "permanent endowment funds" for "beautifying and maintaining cemeteries." *See W.Va.Code*, 35–5–3 [1929].[3] However, in

---

1. A document in the record states:

    The first burial in what was to become Woodlawn [Cemetery] was on April 18, 1875. The body of Joseph Hamilton, a youth about 12 years old was found dead in the old sheep yard on his father's property. He had been shot and the gun was lying beside him. According to the news report of that date, "it was supposed that the gun was accidentally discharged by the boy when he fell from the fence." When told about the tragedy, the boy's father, Elmus Hamilton replied, "Bury him where he lays."

    Mr. Hamilton owned all that portion of Fairmont known as "Hamilton Hill," which included ... what was later to be Woodlawn Cemetery.

2. The parties agree that the appellant is currently known as "Woodlawn Cemetery Company." The record indicates that *Woodlawn* Cemetery Company was "formed" on January 7, 1887 and incorporated on December 19, 1935. It should be noted, however, that records from the West Virginia Secretary of State indicate that *Wood–Lawn* Cemetery Company became "effective" on December 16, 1885.

3. *W.Va.Code*, 35–5–3 [1929] states:

    There is hereby authorized the creation of permanent endowment funds for cemetery associations to be known as "permanent endowment funds," the income from which is to be annually spent by such cemetery associations, or their successors, in beautifying and maintaining cemeteries owned or controlled by

1973, the Legislature passed laws prohibiting cemeteries from operating (after July 1, 1973) without creating and funding a permanent endowment care trust fund. Furthermore, the laws required cemeteries to produce statements of any income, and to place a portion of the proceeds of the sale of any burial plots into the cemetery's permanent endowment care trust fund. *See W.Va.Code,* 35–5A–1 to –8 [1973].

In accordance with the statutes, on February 28, 1974, an attorney acting on behalf of the Woodlawn Cemetery Company deposited a check in the amount of $10,000.00 into the "Woodlawn Cemetery Perpetual Care Trust." Over the years, the cemetery's perpetual care trust has grown in value to approximately $35,000.00. The bank overseeing the perpetual care trust, WesBanco Bank, Inc., continues to make annual disbursements to Woodlawn Cemetery Company of interest income from the trust for use in maintaining the cemetery.

It appears that in 1996, the Board of Directors of the Woodlawn Cemetery Company met and experienced a reorganization or "shake-up," as the circuit court found. The then-president and members apparently resigned, and appellant Jack Lee Decker somehow became a member of the Board of Directors. Since 1996, Mr. Decker has been on the Board, and has been instrumental in maintaining the Woodlawn Cemetery. Various members of Mr. Decker's family compose the remainder of the Board of Directors.[4]

However, no minutes or other records were introduced below showing how the current members of the Board were selected. One surviving member of the pre–1996 Board of Directors, J. Mark Trach, testified that he was present at the 1996 reorganization meeting and that he does not recall voting Mr. Decker onto the Board of Directors. Mr. Trach resigned from the Board due to other commitments, and the other Board members from that era are now deceased.

Aaron Hawkins, the senior vice president and trust officer at WesBanco Bank, testified that he routinely received income statements and deposits into the cemetery's perpetual care trust from the Woodlawn Cemetery Company board of directors prior to 1996. Since 1996, under Mr. Decker's tenure, Mr. Hawkins testified that the bank has not received any income statements from the board, and testified that the board has not made any deposits into the perpetual care trust. Mr. Decker conceded that he has not made any deposits into the perpetual care trust, as required by law, but rather has spent all of the income from burial fees and from the sale of plots on the maintenance and upkeep of the cemetery.

In May 2005, Mr. Decker contacted WesBanco Bank and requested that the perpetual care trust be terminated and the balance paid to Woodlawn Cemetery. Counsel for the Bank wrote to Mr. Decker on May 25, 2005, and told him that cemetery permanent endowment care trusts must remain intact for the benefit of cemetery maintenance, and told him that there is no legal provision for the termination of such a trust.

On September 18, 2006, appellees—five individuals[5] with relatives buried in Woodlawn Cemetery—filed a "Petition for Appointment of Trustees for Woodlawn Cemetery" in the Circuit Court of Marion County. The appellees claimed that no board of trustees existed, or had been authorized by the board of directors, to oversee the cemetery. Pursuant to the procedure set forth in *W.Va.Code,* 35–5–1,[6] the appellees asked that they, and their successors, be appointed to a trustee-

---

such associations. The "permanent endowment funds" are to be created by depositing in such funds all permanent funds derived from all sources set apart by the board of directors of such associations, and by donations, gifts and bequests made to such cemetery associations for such purpose.

4. Mr. Decker is the President; Arlene L. Edgell, Vice President; Susan Brown, Secretary; and Chris Decker, Treasurer.

5. The appellees are John D. Hardesty, Jr.; William B. Wagner; Frank Clark, Jr.; Janice Watkins Cosco; and Douglas A. Hutchinson.

6. This statute will be discussed in greater detail, *infra.*

ship under the name "Woodlawn Cemetery Company."

A hearing was held and evidence was taken by the circuit court on December 4, 2006. Mr. Decker and the company vice president, Arlene Edgell, appeared *pro se* at the hearing.

On December 14, 2006, the circuit court entered an order granting the petition and appointing the five appellees as trustees. The circuit court concluded that "funds from the sale of burial plots [were] not placed in the permanent endowment fund as directed by statute." The circuit court found that while appellants had done an acceptable job maintaining the cemetery, the appellees would "better serve the families who have loved ones buried in the cemetery, as well as the whole community."

The appellants then retained counsel, and a motion for reconsideration was filed on December 29, 2006. The circuit court denied the motion on January 18, 2007.

The appellant officers of Woodlawn Cemetery Company now appeal the circuit court's December 14, 2006 and January 18, 2007 orders.

## II.

■ We have defined the scope of appellate review of a circuit court order as follows:

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 2, *Walker v. West Virginia Ethics Com'n* 201 W.Va. 108, 492 S.E.2d 167 (1997).

The first argument proffered by the appellants is a matter of procedure that is easily dispensed with, and concerns a lack of proper notice and service under Rule 4 of the *Rules of Civil Procedure.*

■ The petition in this case was not personally served on the officers of Woodlawn Cemetery Company. Instead, the appellees served the petition seeking the appointment of trustees solely by publication in a local newspaper. Rule 4(d)(5) of the *Rules of Civil Procedure* requires that personal or substituted service must be made upon a private corporation by delivering or mailing a copy of the summons and complaint to an officer, director, or trustee thereof. The appellants state that the officers of Woodlawn Cemetery Company were properly registered with the Secretary of State. They further state that Mr. Decker was listed with the Secretary of State as the agent for service of process upon the company. Because the appellees failed to even attempt to serve any officers of the company with the summons and complaint, the appellants argue that they have been denied the opportunity to fully participate in this case and that the circuit court's orders are without legal basis.

While the service of process in this case might have been deficient, we note that any objection to that service was waived by the appellants' appearance at, and full participation in, the circuit court's December 4, 2006 hearing on the merits of the petition. Rule 12(h)(1)(B) of the *Rules of Civil Procedure* states that:

A defense of . . . insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

Clearly, because the appellants failed to make a motion or file any pleading challenging the sufficiency of the appellees' service of process by publication, and instead appeared to defend against the appellees' petition on the merits, the appellants waived their objections. We now turn to the substance of the parties' arguments.

The circuit court's order, appointing the appellees as trustees with control over Woodlawn Cemetery, relied upon *W.Va.Code*, 35–5–1 [1923]. That code section states:

Where any conveyance, dedication or devise was made of land for burial grounds, to any church, religious sect, society, congregation or denomination, or to any be-

nevolent, fraternal, patriotic, literary, temperance, or charitable society, order, lodge or association, that has dissolved or become extinct in the county and vicinity where such burial grounds are situated, and the trustees of same have removed or died, the circuit court of such county, upon the application of five or more persons having relatives buried in such burial grounds, shall appoint five trustees, who for the time being and their successors shall be invested with all the powers necessary to promote and carry out the object and purposes named in such conveyance, dedication or devise.

The appellants argue that *W.Va.Code*, 35–5–1 allows the appointment of trustees only for cemeteries specifically enumerated in the statute, that is, those cemeteries that are overseen by a "church, religious sect, society, congregation or denomination, or ... any benevolent, fraternal, patriotic, literary, temperance, or charitable society, order, lodge or association[.]"

In support of their argument, the appellants cite to *Concerned Loved Ones and Lot Owners Ass'n of Beverly Hills Memorial Gardens v. Pence*, 181 W.Va. 649, 653, 383 S.E.2d 831, 835 (1989), where we concluded that "private, profit-making corporations are not among those entities" listed in *W.Va. Code*, 35–5–1, and found that the statute only applies to those entities specifically enumerated in the statute.[7] The appellants argue that because Woodlawn Cemetery Company is a private, profit-making corporation—an entity not enumerated in *W.Va.Code*, 35–5–1—the circuit court erred in it relying upon the statute to replace the company with trustees.

Furthermore, the appellants argue that *W.Va.Code*, 35–5–1 only allows for the appointment of trustees where the prior overseer of the cemetery has "dissolved or become extinct." Because the Woodlawn Cemetery Company was in good standing as a West Virginia corporation with the Secretary of State, the appellants again argue that the statute has no application to the instant case. Instead, the appellants suggest that the proper route would have been for the appellees to bring an action to remove and replace the officers of the corporation. *See W.Va.Code*, 31D–8–809 [2002].

The appellees respond by arguing that the directors of the Woodlawn Cemetery Company violated numerous statutory requirements contained in Chapter 35, Article 5A of the *W.Va.Code*, governing the proper operation of a cemetery. For instance, the appellees note that *W.Va.Code*, 35–5A–2 [1973] prohibits the operation of a cemetery unless a permanent endowment fund "has been established, maintained and administered as required by this article." *W.Va.Code*, 35–5A–4 [1973] prohibits the operation of a cemetery without paying into a permanent endowment fund "ten dollars or ten percent of the gross sales proceeds, whichever is greater, received from the sale of any burial lot;" the money must be placed in the fund "not later than thirty days following the month in which the entire gross sale proceeds are received." And *W.Va.Code*, 35–5A–3 [1973] prohibits the operation of a cemetery after failing to "entrust[ ] the administration of such fund" to a federally insured trust company or federally insured banking institution.

The appellees argue that the various provisions found in Chapter 35, Article 5A of the *Code* specifically and clearly apply to corporations, like the appellants. *W.Va.Code*, 35–5A–1(a) [1973] states that the statutes apply to any "person," and define a "person" as:

> any corporation, company, partnership, individual, association or other entity owning or operating a cemetery for the disposition of human remains.

The appellees assert that the testimony and exhibits show that, prior to 1996, the lawful board of directors of Woodlawn Cemetery Company established and funded a permanent endowment fund for the perpetual care and maintenance of Woodlawn Cemetery. However, since 1996, no proceeds from the sale of any burial plots had ever been deposited in the fund, as required by statute. Mr. Decker testified that burial plots had

---

**7.** To be clear, *Concerned Loved Ones* involved an interpretation of whether *W.Va.Code*, 35–5–2 [1967] applied to a private, profit-making corporation. However, to resolve that question, the Court was required to interpret *W.Va.Code*, 35–5–1, the statute at issue in the instant case.

been sold, but that he neither made any required deposits into the fund nor did he have any intention of making such deposits.

Taking the evidence and statutes together, the appellees assert that the circuit court correctly found that, subsequent to 1996, Woodlawn Cemetery Company had failed to perform its statutory duties concerning the maintenance of the cemetery pursuant to *W.Va.Code*, 35–5A–1, *et seq.* The appellees further argue that the record indicates that the circuit court could not even say that Mr. Decker and his family were properly appointed as directors of the company, because Mr. Decker would not produce minutes or any other evidence establishing that fact. Accordingly, the appellees assert that the circuit court fairly found that trustees could be appointed to oversee the operation of the cemetery. We agree with the appellees.

Cemeteries hold a unique status in society. "The burying-ground is God's acre, and the lands are dedicated to uses of the most sacred character that the use thereof is considered a charitable use." *Parker v. Fidelity Union Trust Co.*, 2 N.J.Super. 362, 389, 63 A.2d 902, 916 (1944). As this Court once recognized,

> When once property has been dedicated for a special purpose, as for a burial ground, or where a city has dedicated it for that purpose, and persons have acted upon the faith of such dedication by burying their loved ones there, the city cannot devote the property to any other purpose.

*Ritter v. Couch*, 71 W.Va. 221, 228, 76 S.E. 428, 431 (1912).

■ It is fundamental rule that corporations established to operate cemeteries are uniquely different from other types of corporations. Cemetery corporations are, essentially, trustees charged with operating and maintaining land dedicated as a cemetery. "Cemetery corporations are usually organized for public rather than for private purposes, and their management is in the nature of a charitable, pious, or sacred trust." 14 C.J.S. "Cemeteries" § 4 [2006]. We acknowledged this principle in *Concerned Loved Ones and Lot Owners Ass'n of Beverly Hills Memorial Gardens v. Pence*, 181 W.Va. at 653, 383 S.E.2d at 835 where we stated:

> [A] cemetery corporation, in effect, becomes a trustee to sell and convey burial lots upon dedication of its land to cemetery purposes. It has been held that "[t]hose who administer the affairs of a cemetery are in reality trustees, and are subject to all of the rules of law respecting the duties and liabilities of a trustee." Syl. pt. 1, *Burke v. Gunther*, 128 N.J.Eq. 565, 17 A.2d 481 (1941). *See Oakland Cemetery Co. v. People's Cemetery Association*, 93 Tex. 569, 574, 57 S.W. 27, 29 (1900). *See also*, 14 Am.Jur.2d *Cemeteries* § 16 (1964).

While not explicitly stated in the circuit court's order, the circuit court correctly presumed that the Woodlawn Cemetery Company was essentially a trustee charged with administering the affairs of the Woodlawn Cemetery. Furthermore, based upon the existing record, the circuit court could fairly find that the appellants had failed to properly execute their duties in administering the cemetery's affairs. The appellants, who claim to be the duly-appointed officers of Woodlawn Cemetery Company, were given an opportunity by the circuit court to introduce minutes or other documentation establishing the validity of their offices; this was not done. Further, the evidence and testimony establishes that the appellants consciously and deliberately did not comply with the requirements of *W.Va.Code*, 35–5A–1, *et seq.*, refused to deposit any portion of the cemetery's income into the cemetery's perpetual care fund, and in fact attempted to liquidate the perpetual care fund.

Based upon this record, we cannot say that the circuit court's finding—that, in essence, the appellants had abandoned their trustee responsibilities toward the cemetery—was clearly wrong.

■ *W.Va.Code*, 35–5–1 permits a circuit court to appoint trustees to oversee land dedicated to use as a burial ground when the organization charged with maintaining the land has "dissolved or become extinct." We think that the circuit court did not abuse its discretion in applying this statute to the instant case. Once the circuit court concluded that the appellants had abandoned their trustee position over the cemetery, *W.Va.Code*,

35–5–1 established the proper procedure for appointing new trustees to oversee the "object and purposes" necessary to the operation of the cemetery.[8]

### III.

The circuit court's December 14, 2006 and January 18, 2007 orders appointing the appellees as trustees over Woodlawn Cemetery are affirmed.

8. As stated *supra*, the appellants' argue that *W.Va.Code*, 35–5–1 applies only to certain narrow classes of organizations like a "charitable society, order, lodge or association"—and does not apply to cemetery land controlled by a corporation. *See Pence, supra.* However, our examination of the history of the enactment of *W.Va. Code*, 35–5–1 suggests that the Legislature was less than precise in its choice of wording. Our limited research indicates that, in the context of cemeteries, the terms "association" and "incorporated cemetery association" were often used interchangeably, thereby calling into question the validity of our holding in *Pence.*

However, as the history behind *W.Va.Code*, 35–5–1 was not fully briefed by the parties, and because we can resolve this case on other grounds, we decline to address the issue further.